BASIL FISCHER, Plaintiff in Error, *vs.* BABETTE FISCHER, Defendant in Error.

*Opinion filed June 29, 1910.*

1. HUSBAND AND WIFE—*marriage relation affords no immunity against consequences of fraud by either party.* While a husband may make a voluntary conveyance of a part or all of his property to his wife, which, in the absence of any fraud, will be sustained as against the husband or his representative, yet the intimacy of the marriage relation requires strict scrutiny of such a transaction, as such relation affords no immunity against the consequences of fraud practiced by either party upon the other.

2. SAME—*when a deed from husband to wife will be set aside.* A deed and bill of sale conveying all of an aged man's real estate and personal property to his young wife upon her promise to cease her harsh and unkind treatment and live peaceably with him, will be set aside in equity if it appears that the wife obtained the property with the intention of pursuing the course of conduct she thereafter followed, which resulted in the husband's being driven to leave his home and secure a divorce from the wife upon the ground of adultery.

WRIT OF ERROR to the Circuit Court of Union county; the Hon. WILLIAM N. BUTLER, Judge, presiding.

JAMES LINGLE, for plaintiff in error.

P. E. HILEMAN, for defendant in error.

Mr. CHIEF JUSTICE VICKERS delivered the opinion of the court:

Plaintiff in error, Basil Fischer, filed a bill in the circuit court of Union county against Babette Fischer, his wife, charging her with adultery and praying for a divorce and for the cancellation of a deed executed by plaintiff in error to defendant in error, and a cancellation of a bill of sale for about $1000 worth of personal property, consisting of live stock, farm implements and household goods.

The bill alleges that the parties to this suit were married in 1893; that plaintiff in error was at the time of fil-

ing the bill seventy years of age and his wife was then about forty years of age; that the plaintiff in error was crippled in one of his hands and was thereby unable to earn a living by farming; that his wife was healthy and strong; that he was kind to his wife and did all in his power to make her comfortable, happy and contented; that his wife was dissatisfied and unkind to plaintiff in error and constantly importuned him to transfer his property to her, always promising that if he would do so she would take good care of him, treat him kindly and make his home life peaceable and happy; that in order to satisfy his wife, remove the cause of domestic turmoil and bring to his home peace and repose, on the 6th day of August, 1907, plaintiff in error conveyed, by deed, his homestead worth $2000, which was all the real estate he owned, and his personal property by bill of sale, to the defendant in error, thereby divesting himself of all the property, of every kind and character, which he owned; that defendant in error did not keep her promises made to plaintiff in error, which were the sole consideration for said conveyances, but, on the contrary, after having obtained said conveyances defendant in error treated plaintiff in error more unkindly and harshly than before; that before the execution of the conveyances defendant in error advertised in a paper for "a good German man in middle years; a good home to the right person;" that said advertisement was answered by a man by the name of Schmidt, who was engaged by defendant in error to work on the farm; that soon after Schmidt came into the family an intimacy commenced between him and the defendant in error; that Schmidt completely supplanted plaintiff in error and frequently joined with defendant in error in abusive and harsh treatment of plaintiff in error; that the treatment the plaintiff in error received from his wife and said Schmidt was so harsh and unkind that he was compelled to and did leave his home; that defendant in error and said Schmidt continued to occupy

the home, where they lived in adulterous relations. It is charged that defendant in error received all the rents and profits from the farm and had disposed of a large part of the personal property, and denied to plaintiff in error all enjoyment of his home and the proceeds of his property and bestowed all of her love, sympathy and kindness upon Schmidt. The bill prays for a divorce on the ground of adultery and for a cancellation of the deed and bill of sale on the ground of fraud, and for general relief.

Defendant in error answered the bill and denied all of the material averments thereof and charged plaintiff in error with extreme and repeated cruelty and habitual drunkenness, and prayed for a divorce from him on these grounds, and for alimony in the event the court should set aside the conveyances.

Issues having been made up on the original and cross-bills, a trial by a jury was had, which resulted in finding the defendant in error guilty of adultery as charged in the original bill and found plaintiff in error not guilty of the charges made against him in the cross-bill. The issue presented by plaintiff in error's original bill in respect to a cancellation of the conveyances was heard by the court. The decree of the court granted plaintiff in error a divorce on the ground of adultery but denied him any relief in regard to the property conveyed. Plaintiff in error has appealed from that portion of the decree dismissing his bill for want of equity in regard to the cancellation of the deed and bill of sale. Neither party questions the decree in so far as it grants divorce.

The testimony of plaintiff in error sustains his bill and he is corroborated by the circumstances in proof. A daughter of defendant in error testified that her mother and step-father did not get along well together; that there were difficulties and trouble between them frequently. The evidence shows that at the time the parties were married the wife had no property whatever, and that plaintiff in error

owned in his own right a small farm with considerable personal property. He was worth between $3000 and $4000. She had nothing. Now she has all of his property and he is left homeless and penniless. The only question presented for our determination is whether the court erred in refusing to set aside the conveyances made to the wife.

The marriage relation affords no immunity from the consequences of fraud practiced by either party upon the other. The relation of husband and wife is so intimate and the confidence reposed in each other is so great that courts of equity should scrutinize with great care all transactions between them, where there is any reasonable ground to suspect that fraud has been practiced by either upon the other. It is true that a husband may make a voluntary settlement upon his wife of all or any part of his property, and if done freely and without any fraud the transaction will be sustained as against the husband or his representatives. If the transaction is fair and honest and made in good faith, subsequent acts of misconduct of the wife not in contemplation at the time of the conveyance would probably not warrant a court of equity in decreeing a cancellation of the conveyance. If, however, the transfer is procured by the wife and is attended with circumstances from which it can be reasonably inferred that she contemplated an abandonment of her marital duties after securing such conveyance, a court of equity will grant relief and restore the property to the husband. (*Stone* v. *Wood,* 85 Ill. 603; *Hursen* v. *Hursen,* 212 id. 377; *Brixel* v. *Brixel,* 230 id. 441.) The evidence in this record satisfies us that the conveyances in question were made in consideration of the wife's promises to treat the plaintiff in error kindly and discharge her duty to him as his wife. The evidence clearly shows that even before she had succeeded in obtaining the conveyances she had advertised for a man, and had taken the precaution to specify in her advertisement that she wanted "a good German man in middle years,"

and that she could furnish "a good home to the right person." Reading this language in the light of what happened after Schmidt came into the family, it is difficult to resist the conclusion that the defendant in error contemplated the course of conduct that she pursued when she was importuning plaintiff in error to convey her his property. If such was her purpose, as we are constrained to believe it was, a court of equity has ample power to relieve against such a fraud at the instance of the husband against his wife. In *Bayse* v. *Bayse,* 152 Ind. 172, (52 N. E. Rep. 797,) it was held that a voluntary conveyance by a husband to his wife, fraudulently procured through pretended affection for him and promising to be a faithful wife, with an intent of abandoning him after obtaining such conveyance, would be set aside in equity; and a like holding is found in *Brison* v. *Brison,* 75 Cal. 252, and *Meldrum* v. *Meldrum,* 15 Colo. 478. In *Turner* v. *Turner,* 44 Mo. 539, it is said: "A wife in whom her husband reposed the strictest confidence might well be calculated to exert an influence on his mind and obtain the title to property in her own name. If it was done with an honest intent to secure a home for herself and her offspring the transaction would not only be legal but praiseworthy, but if the influence was exerted with a design of despoiling the husband and then abandoning him, the law would condemn and stigmatize the transaction."

Under the rules of law announced in the foregoing authorities and the facts appearing in this record the circuit court erred in refusing to set aside these conveyances.

The decree of the circuit court of Union county is reversed and the cause remanded to that court, with directions to enter a decree setting aside the deed and bill of sale and adjudging all the costs against the defendant in error.

*Reversed and remanded, with directions.*