THE LONDON GUARANTEE AND ACCIDENT COMPANY, Appellee, *vs.* AMERICAN CEREAL COMPANY, Appellant.

*Opinion filed June 20, 1911—Rehearing denied October 11, 1911.*

1. TRIAL—*when alleged propositions of law are properly refused.* Alleged propositions of law are properly refused which are mere findings of fact which the court is requested to make, or which either assume as true facts which are in controversy, or certain matters extraneous to the issues in the case.

2. EVIDENCE—*what is essential to render testimony of deceased witness admissible in subsequent suit.* In order to render the testimony of a witness in a former suit admissible in a subsequent suit upon the ground that the witness has died since the giving of his testimony, it must appear that both suits involved the same issue between the same parties or persons in privity with them, and the fact that the party against whom the testimony is offered in the subsequent suit was a party to the former suit and had full opportunity to cross-examine the witness does not necessarily render the testimony admissible.

3. SAME—*effect of including persons in privity with parties in the rule concerning testimony of deceased witness.* The inclusion of persons in privity with the parties in the rule concerning the admissibility in a subsequent suit of the testimony of a witness who has died since giving his testimony in the former suit does not extend the rule to a subsequent suit between a party and a person who was in privity with such party in the former suit, as it cannot be said there was any issue between them in that suit.

4. SAME—*when testimony of deceased witnesses is not admissible.* Where a guaranty insurance company which, under its contract, has insisted upon conducting the defense in a damage suit against the assured withdraws from the case when witnesses testify to facts which, if true, take the case out of the contract with the assured and relieve the company from liability, such testimony is not admissible to prove those facts in a subsequent suit brought by the guaranty company after the death of the witnesses, to recover from the assured the expense of defending the former suit.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

JONES, ADDINGTON, AMES & SEIBOLD, for appellant.

F. J. CANTY, and ROBERT J. FOLONIE, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

This is an appeal, granted under a certificate of importance, from a judgment of the Appellate Court for the First District affirming a judgment for $956.73 and costs of suit, rendered by the superior court of Cook county in an action of assumpsit brought by the London Guarantee and Accident Company, appellee, against the American Cereal Company, appellant, to recover the amount expended by appellee in the defense of a suit brought in the district court of Linn county, Iowa, by Henry Overhauser, as administrator of the estate of William L. Overhauser, deceased, against the American Cereal Company and others.

The facts upon which the action of assumpsit is based are as follows: Some time prior to October 26, 1899, appellant, by an oral contract, arranged with Connor & Co., a firm engaged in the general contracting business at Cedar Rapids, Iowa, to construct a building for it in Cedar Rapids. After making this contract appellant purchased from appellee a policy of insurance, by which, in consideration of the payment of $50 premium, appellee, subject to the agreements contained in the policy, agreed to indemnify appellant for the period of one year, beginning on October 26, 1899, and ending on October 26, 1900, "against loss arising solely from his (its) contingent liability as general contractor or owner, from common law or any statute, for damages on account of bodily injuries, fatal or non-fatal, accidentally suffered by any person or persons during the construction of the building described in the schedule hereinafter given, [being the building above mentioned,] and resulting from the negligence of any contractor or subcontractor engaged in the construction of said building." The agreements contained in the policy included a provi-

sion that the assured, upon the occurrence of an accident, should give immediate written notice thereof to the company and should give like notice of any claim that should be made on account of such accident, and also included the following provisions: "If thereafter any suit is brought against the assured to enforce a claim for damages on account of any accident covered by this policy, the assured shall immediately forward to the head office of the company for the United States of America every summons or other process as soon as the same shall have been served on him (it), and the company will at its own cost defend against such proceedings in the name and on behalf of the assured, or settle the same, unless it shall elect to pay to the assured the indemnity provided for in clause A of special agreements as limited therein. The assured shall not settle any claim except at his (its) own cost, nor incur any expenses, nor interfere in any negotiation for settlement or in any legal proceeding, without the consent of the company previously given in writing. * * * The company's liability for an accident resulting in injury to or in the death of one person is limited to five thousand dollars ($5000). * * * If the assured is the owner of the building mentioned in the schedule, it is agreed that all the work of constructing the same is to be done by contract at the risk of the contractor or contractors, and that the assured has not and will not, by contract or otherwise, voluntarily assume any liability for loss on account of bodily injuries suffered by any person or persons by reason of the negligence of any contractor or sub-contractor."

On November 20, 1899, William L. Overhauser, while riding a bicycle upon one of the streets of Cedar Rapids, struck a rock which had been dropped from a wagon which was being used in hauling dirt and rock by men engaged in the construction of the building described in the policy of insurance, and was thereby thrown from the bicycle and sustained injuries from which he died. During the early

part of January, 1900, the administrator of his estate brought suit in the district court of Linn county, Iowa, against the city of Cedar Rapids to recover damages occasioned by his death. The city notified appellant and Connor & Co. to appear and defend the action, as the liability of the city, if any, was due to their negligence. On January 12, 1900, appellant sent a copy of this notice to appellee, accompanied by a letter from appellant in which the following statement was made: "The claim in question, if there is any liability, comes under policy No. 242,362, issued by your general agent, Frederick S. Gray." In reply thereto, appellee's general manager, on January 18, sent a letter to appellant acknowledging receipt of the notice and containing the following statements: "While the possibility of your liability is very remote, we will, of course, protect your interests under policy 242,362. I have referred the matter to our attorneys, Messrs. Powell & Harman, Cedar Rapids, who will make investigations, and if there are any reasons why the case is not covered by the policy we will let you know later on." Afterwards appellant and Connor & Co. were made defendants to the suit, and the summons served upon appellant was sent by it to appellee. Thereafter, by correspondence and in personal interviews, in answer to appellant's offers to employ attorneys to represent it in the defense of the suit, appellee assured appellant that it was looking after the case, that its attorneys would protect appellant's interests, and that there was no necessity of appellant incurring any expense whatever, as the defense would be as vigorous with Powell & Harman alone as it would be with any help that could be given them.

The defense on behalf of appellant was conducted by appellee, through Powell & Harman, its attorneys, until the end of the second trial. During the progress of the first trial the plaintiff dismissed the suit as to the city of Cedar Rapids, and at the conclusion of the plaintiff's case

the court directed a verdict in favor of the remaining defendants. The plaintiff in that suit prosecuted an appeal to the Supreme Court of Iowa, and the judgment of the district court was reversed and the cause remanded. A second trial was then had in the district court, at the conclusion of which the court directed a verdict in favor of Connor & Co., and the jury returned a verdict finding the American Cereal Company guilty and assessing the plaintiff's damages at $7000. Upon the return of this verdict appellee caused its attorneys to withdraw from the case, and notified appellant that as it had been determined by the verdict of the jury rendered upon the second trial that Connor & Co. were not independent contractors but were acting as agents for appellant in the construction of the building, the policy did not cover appellant's liability for the death of Overhauser and that appellee would have nothing further to do with the case. Appellant retained other attorneys and prosecuted an appeal to the Supreme Court of Iowa, and the judgment against it was reversed and the cause remanded for a new trial because of the refusal of the court to give certain instructions requested by appellant defining the conditions under which the jury would be warranted in reaching the conclusion that the relationship of Connor & Co. was, in fact, that of independent contractor. So far as the record shows there has been no further trial of that cause.

After refusing to further conduct the defense of the case against appellant, appellee rendered a statement of the amounts paid out by it in conducting such defense up to the time the verdict was rendered upon the second trial and demanded the re-payment of those amounts by appellant, claiming that it had undertaken the defense of the suit under the belief, induced by appellant, that Connor & Co. were independent contractors and under the belief that appellant's liability was therefore covered by the policy, but had been informed by its attorneys that appellant's super-

intendent, and Connor, of the firm of Connor & Co., had both testified to a state of facts on the second trial which proved that Connor & Co. were not independent contractors but were acting merely as agents for appellant in the construction of the building. Appellant's failure to pay the sum demanded resulted in this suit, brought to enforce payment thereof. The cause was tried before the court without a jury.

In addition to the above facts, which are undisputed, appellee introduced evidence which tended to show that appellant referred appellee's attorneys, Powell & Harman, to George Stuart, the superintendent of appellant's plant at Cedar Rapids, as one from whom they could obtain information with reference to the terms of the oral contract under which Connor & Co. were constructing the building, and that the terms of the contract, as stated by George Stuart to the attorneys, were such as to constitute Connor & Co. independent contractors in the construction of the building; that after the first trial, and shortly before the second trial, George Stuart's attitude in the case changed, and he stated to appellee's attorneys that as appellant was protected by its policy it did not want to cast the responsibility on Connor & Co., and that during the second trial he assisted Connor & Co. in making their defense, which consisted chiefly in showing that they were not independent contractors but were acting merely as agents for appellant in constructing the building, and that appellant, and not Connor & Co., was liable for the damages occasioned by the death of Overhauser. In order to prove that Connor & Co. were not independent contractors, appellee offered, and the court admitted in evidence over appellant's objection, a transcript of the testimony given upon the second trial of the Overhauser case by A. H. Connor, George Stuart and J. E. Fitzsimmons, all of whom had since died. The testimony of each of these witnesses tended to show that Connor & Co. were not independent

contractors in the construction of the building for appellant at Cedar Rapids.

At the close of all the evidence in the case appellant submitted to the court seven propositions to be held as law in the decision of the case, upon each of which the court wrote "refused." The only questions that can be considered upon this appeal are questions of law, arising upon the action of the court in refusing the propositions submitted by appellant to be held as law in the decision of the case, and in admitting the transcript of the testimony given by witnesses, now deceased, upon the second trial of the Overhauser suit. The propositions which appellant submitted to the court were properly refused. Some of them were mere findings of fact which the court was requested to make, while the others either assumed as true facts which were in controversy or contained matters extraneous to the issues in the case.

The policy of insurance issued to appellant by appellee indemnified appellant only against loss arising from its contingent liability, as owner, for damages on account of bodily injuries, fatal or non-fatal, accidentally suffered by persons during the construction of the building, and resulting from the negligence of any contractor or sub-contractor engaged in the construction thereof. By a provision in the policy appellant represented and agreed that all work of constructing the building mentioned in the policy should be done by contract at the risk of the contractor or contractors, and that it had not, and would not, by contract or otherwise, voluntarily assume any liability for loss on account of bodily injuries suffered by any person by reason of the negligence of any contractor or sub-contractor. By another provision of the policy appellee agreed that if any suit should be brought against appellant to enforce a claim for damages on account of any accident covered by the policy, appellee would, at its own cost, defend against such proceeding in the name and on behalf of appellant.

These provisions of the policy show conclusively that the policy only covered the appellant's contingent liability, as owner, for personal injuries resulting from the negligence of one whom the law considers an independent contractor in the construction of the building, and that appellee was not required to defend, at its own cost, any proceeding brought against appellant to recover damages on account of bodily injuries, fatal or non-fatal, unless such injuries resulted from the negligence of an independent contractor engaged in the construction of the building. In order to recover from appellant the amount expended in the defense of the Overhauser suit, it was incumbent upon appellee to prove, among other things, that Connor & Co. were not independent contractors. The only evidence tending to prove that issue is the transcript of the testimony of the deceased witnesses, Connor, Stuart and Fitzsimmons, which was given on the second trial of the Overhauser suit, and if the court erred in admitting this transcript in evidence over appellant's objection, it necessarily follows that the judgments of the Appellate and superior courts must be reversed because of that error.

In *McInturff* v. *Insurance Co. of North America,* 248 Ill. 92, we said: "There is a general agreement of authorities that evidence given on a former trial of the same action, or a former action involving the same issues between the same parties, is admissible if it be established that the witness is dead." We also quoted a paragraph from the sixteenth edition of Greenleaf on Evidence, as enlarged and annotated by Prof. Wigmore in 1899, which contains the following statement: "As to the parties, all that is essential is that the present opponent should have had a fair opportunity of cross-examination." And with reference to that statement we said: "If this paragraph is read as laying down the rule broadly that a fair opportunity for cross-examination by the party against whom the evidence is offered is all that is necessary to render it

admissible, then the overwhelming weight of authority is against the accuracy of the rule as stated; but if it is read, as no doubt its author intended it should be, as stating the rule that a mere nominal change of parties is of no consequence provided the parties in the second action are so privy in interest with those on the former trial that the same motive and need for cross-examination existed, then the rule stated is in accord with the great weight of authority." The holding in the *McInturff case* was to the effect that the evidence given by a witness, since deceased, in a criminal prosecution against the owner·of a building for setting fire to and burning property covered by insurance was inadmissible in a subsequent action by the owner of the building against the insurance company to recover upon the policy, such testimony being offered by the insurance company, notwithstanding the fact that the owner of the building had full opportunity to cross-examine the witness in the criminal proceeding against him.

It may therefore be regarded as the settled law of this State that in order to render the testimony of a witness in a former action admissible in a subsequent action on the ground that the witness has died since giving his testimony, it must appear that both actions involved the same issue between the same parties or their privies, and the fact that the party against whom the testimony is offered in the subsequent action was a party to the former action and had full opportunity to cross-examine the witness does not necessarily render the testimony admissible. The issue in the Overhauser suit whether Connor & Co. were independent contractors, was one, first, between the plaintiff in that suit on the one side and appellant on the other; second, between the plaintiff in that suit on the one side and Connor & Co. on the other; and third, between Connor & Co. on the one side and appellant on the other; but there was no issue between appellant and appellee in the former action involving the question whether Connor & Co. were

independent contractors, nor was there any such issue between appellant and anyone with whom appellee was in privity. It therefore did not appear that both actions involved the same issue between the same parties or their privies, and for that reason the court should have sustained appellant's objection and excluded the testimony of the deceased witnesses given on the trial of the Overhauser suit.

The appellee contends, and the superior and Appellate Courts held, that as appellee was in privity with appellant in the former action to which appellant was a party, and as appellant had the right to cross-examine the witnesses in the former action, the testimony given in the former action upon the same issue involved in this action was admissible. If this were an action between plaintiff in the Overhauser suit on the one side and appellee on the other, or between Connor & Co. on the one side and appellee on the other, and involved the issue whether Connor & Co. were independent contractors in the construction of the building for the appellant, then the testimony of the deceased witnesses given on the trial of the Overhauser suit upon this issue would be admissible in this case, for the reason that appellee, while not a party to the former action, was in privity with appellant, who was a party to that action, was present and participated in that trial and had full opportunity to cross-examine the witnesses. The inclusion of privies of parties in the rule with reference to the admissibility of testimony given by deceased witnesses in former actions cannot, however, extend the rule so as to render admissible in a subsequent action between one of the parties in a former action and one in privity with that party in the former action the testimony of deceased witnesses given in the former action because there was no issue between the party and his privy in the former action, and the mere fact that the party to the former action had full opportunity to cross-examine the witnesses does not;

alone, as held in the *McInturff case,* render the evidence given in the former action admissible in the subsequent action.

There is, moreover, another objection to the admissibility of the testimony in this case. It appears that, as between appellant and appellee, the former had no opportunity to cross-examine any witnesses, but appellant's defense in the trial in which the testimony was given was conducted by appellee under a contract which appellee then believed covered appellant's liability, if any, for damages sought to be recovered in that action. Appellee had agreed to defend, at its own cost, any action brought against appellant to enforce a claim for damages on account of an accident covered by the policy, and appellant had agreed not to interfere in any legal proceeding without the consent of the insurance company previously given in writing. Appellant attempted to obtain this consent by offering to employ its own attorneys to represent it and to assist the attorneys employed by appellee, but appellee, instead of giving its consent, dissuaded appellant from participating in the trial through its own attorneys by representing that appellee's attorneys were looking after the defense of the suit and needed no assistance from attorneys employed by appellant. While the law gave appellant the right to participate in the defense of the Overhauser suit and to examine and cross-examine witnesses therein, yet such conduct on its part without appellee's written consent would have been a breach of its contract with appellee, and, so far as appellee is concerned, it is therefore, by its contract and by its conduct when appellant offered to employ attorneys to represent it in that action, estopped to rely upon the legal right of appellant to cross-examine witnesses in the former action in order to render the evidence given in the former action admissible as against appellant in this action.

For the reasons above given, and for the additional reason that it was manifestly to the interest of appellee to

make it appear in the former action that Connor & Co. were not independent contractors, and thus relieve it of any liability under the policy, including the liability to defend the suit at its own expense, the testimony of the deceased witnesses given on the second trial of the Overhauser suit should have been excluded.

The cases cited by appellee to the effect that a former adjudication of a fact or matter in controversy is conclusive when a controversy arises over that same fact or matter between a party to the judgment and one who was in privity with him in the proceeding in which the judgment was rendered, have no application to the question presented for our determination. Had there been a final judgment in the Overhauser suit against appellant, and had that judgment, together with the testimony of the deceased witnesses showing that the judgment necessarily involved a determination of the fact that Connor & Co. were not independent contractors, been introduced in evidence in this case by appellee to establish the fact that Connor & Co. were not independent contractors, then the authorities cited by appellee would support the action of the court in admitting such evidence. The testimony of the deceased witnesses, however, in such case, could only be received in evidence for the purpose of showing the issue involved in the action in which the judgment was rendered, and not as proof of the matters testified to by the deceased witnesses. *Washington Gas Light Co.* v. *District of Columbia,* 161 U. S. 316.

For the error of the court in admitting in evidence the transcript of the testimony given on the second trial of the Overhauser suit by witnesses since deceased, the judgments of the Appellate and superior courts will be reversed and the cause will be remanded to the superior court.

*Reversed and remanded.*