(No. 13503.—Decree affirmed.)
LILLIE U. COONCE, Defendant in Error, vs. JOSIAH T.
COONCE et al. Plaintiffs in Error.

*Opinion filed February 15, 1921—Rehearing denied April 7, 1921.*

1. DIVORCE—*what is a sufficient finding that adultery was not condoned.* Where no defense of condonation is set up in an answer to a bill sufficiently alleging adultery as a ground for divorce, a decree finding that the defendant had committed adultery "as charged in the bill of complaint" must be considered as a finding that the offense proved had not been condoned, especially where the wife is the complainant and the bill alleges reasons why the complainant submitted to the misconduct of her husband.

2. DEEDS—*when deed from wife to husband may be set aside.* A deed from a wife to her husband may be set aside in a suit by the wife for divorce where the bill prays for such relief and the evidence shows the deed was obtained by the husband in bad faith and for no consideration except promises of good behavior, which he did not intend to carry out.

WRIT OF ERROR to the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

CHARLES P. R. MACAULAY, for plaintiffs in error.

RECTOR C. HITT, and BUTTERS & CLARK, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is a writ of error sued out to review a decree of the circuit court of LaSalle county granting defendant in error a divorce and setting aside a conveyance to plaintiff in error Josiah T. Coonce, husband of defendant in error, of the undivided one-half of an eighty-acre farm owned by her.

The bill was filed October 30, 1918, and alleged complainant was, and had been for more than a year last past, a resident of LaSalle county; that April 6, 1912, she was

married to Josiah T. Coonce and lived with him until a recent date, enduring the many faults and improper treatment of her husband until further endurance became impossible and she ceased to treat him as a husband in the month of September, 1918, since which time she has not cohabited with him as his wife though from necessity compelled to live in the same house with him, as she had no other place to go; that no child was born of the marriage; that at the time of the marriage complainant owned an eighty-acre farm, well improved with a ten-room house and other buildings, from the rent of which she derived a comfortable living; that she also owned all the furniture and fixtures in the dwelling, which was amply furnished with all needful supplies; that defendant had no property except his wearing apparel and not more than $50 in money; that he had once been a barber but later a peddler of pots, pans and cooking utensils, which he was assuming to carry on with agents at the time of the marriage; that complainant learned after the marriage that her husband had been an expert card player and engaged in that business in divers places for reward of some kind; that at the time of the marriage complainant was fifty-eight years old, and her husband claimed to be a few years older but appeared to be in good physical health; that complainant was not strong but was able to and did do her ordinary housework; that after her marriage she was compelled to do her own housework, milk cows and do the greater part of the work in caring for the garden and about ten acres of land not leased but occupied as a residence, garden, orchard and cow pasture; that soon after the marriage complainant's husband entered upon a scheme to defraud her of her property and otherwise wrong and injure her; that he pretended to be solicitous of her health and sought to prevail on her to secure assistance to do the work, and also represented that she might die and her relatives would deprive him of all rights in her property unless she made some provision for

him; that by his shrewdness and cunning he overcame her
judgment and she consented to convey him an undivided
half of her farm, "he promising to ever be and remain a
true, faithful and loving husband;" that about the 6th of
September, 1912, complainant was persuaded by her hus-
band to go with him to the city of LaSalle to visit a fam-
ily who were his friends, and while at the house of said
friends her husband exhibited to her a deed to be signed
by her conveying him an undivided one-half of the farm
and requested her to go to a certain bank and sign and ac-
knowledge the deed, which she did, and the deed was there-
after recorded in the recorder's office; that soon after, the
complainant's husband assumed an air of proprietorship and
procured complainant to join with him in a mortgage on
the farm for $500 to purchase an automobile, which mort-
gage is still unpaid; that complainant's husband has never
done any work whereby he has contributed to the support
of complainant but has had his living out of the income
from the farm and has done practically no work but has
dissipated the income from the farm besides contracting
other indebtedness; that in May, 1914, complainant's hus-
band insisted on securing a woman to do the housework,
and claimed he had advertised for such a person and re-
ceived a reply from a woman named Josephine Lombus,
of Peoria, who notified complainant's husband she would
be in Utica on a certain day, where she was met by com-
plainant's husband and brought to their home; that prac-
tically from the time said woman came, down to the time of
filing the bill, the relations between her and complainant's
husband have been improper and illegal; that complainant
was compelled to submit to their misconduct; that they kept
company together both in and out of the house, and as a
rule every time the complainant's husband went to the barn
said woman went with him and they would visit and talk
together in undertones and in every way endeavored to
make life a burden for complainant; that her persuasion

for her husband to desist from such conduct only increased his efforts to annoy her by continuing his attentions to said woman; that about the year 1915 the complainant's husband complained of bad health and went to various doctors for treatment but his health did not improve and in the spring of 1916 he went to Hot Springs, Arkansas; that while there he kept up a correspondence with Josephine Lombus and procured her to go there for treatment at the same hospital where he was being treated; that he wrote complainant of the baths and treatment he was taking and complainant has since learned it was for syphilis, and that both he and Josephine Lombus were in the same hospital, taking the same treatment, for several weeks; that when they returned they continued to keep in each other's company as before and the Lombus woman assumed to superintend the household affairs to the exclusion of complainant; that in July, 1918, complainant saw them in a bed-room in the house, both nearly naked; that complainant could not prevent their misconduct and was afraid to tell her neighbors and friends about it; that about the month of August, 1918, complainant's husband and the Lombus woman made a trip together to Peoria and remained away over night; that finally complainant learned that many of her neighbors knew of such misconduct, and she concluded to take action to protect herself and save her property, if possible; that complainant's husband and Josephine Lombus had been repeatedly guilty of adultery and actually lived in a state of adultery for more than three years; that each of them has an incurable disease of a venereal character, which complainant believed from her husband's letter is syphilis; that about October 25, 1918, complainant could no longer bear up under the treatment she was receiving and decided to file the bill in this case; that complainant's husband is a man of cunning and deceitful disposition, violent temper, addicted to the use of profane language toward her, and when angry carries a revolver and frequently acted in com-

plainant's presence in such a manner that she was in fear
of her life, and she is now in fear of bodily harm if he
is permitted to live on the premises with or near her; that
he has recently threatened to convey half of the farm to
the Lombus woman and that they would live together there-
on; that the complainant believes if, after commencing this
action, she continues to live in her house she would be in
danger of bodily harm at the hands of her husband and the
Lombus woman, and that she cannot longer live there and
endure the treatment she has received; that she fears they
will remain in and about the premises unless enjoined from
so doing and will assault, annoy and molest complainant;
that the deed from her to her husband was procured by
fraud, deception and malice, and no consideration, good or
valuable, was received by her therefor; that when her hus-
band received the deed he intended to violate his marriage
vows and cheat and defraud complainant out of her prop-
erty; that in equity she still has the equitable title to the
land and the deed should be set aside and declared null and
void; that the complainant has no other property than the
land and personal property on it; that she is unable to earn
money or perform labor for her support; that her husband
is able to earn his living by labor, and he and the Lombus
woman ought not to be supported out of the income from
complainant's land.   Josiah T. Coonce and Josephine Lom-
bus were both made defendants to the bill, which prays for
a divorce and that the deed from complainant to her hus-
band be set aside, or that he be decreed to re-convey the
premises to her in lieu of all her claims growing out of
the marriage relation, in the nature of alimony, suit money,
solicitor's fees, etc.   The bill also contained a prayer for
general relief.   Upon the filing of the bill an injunction was
issued as prayed.

Josiah T. Coonce answered the bill, admitting the mar-
riage; that at that time complainant owned the eighty-acre
farm and that in September, 1912, she made him a deed

for the undivided one-half; avers the deed was made to fulfill a pre-nuptial contract, whereby complainant agreed that if defendant would marry her she would deed him an undivided one-half of the farm; that the parties lived together from the time of their marriage until September, 1918; that defendant spent all his time in farming the land, raising stock and doing all kinds of farm work, for which he received no compensation. The answer denies every allegation of the bill, "excepting those admitted and as hereinbefore set forth, as specifically as if denied *hæc verba;*" avers that during the time he lived with complainant her conduct was reprehensible and unnatural; that for more than a year prior to the time of the marriage he had sexual intercourse with complainant, and during that period complainant promised him if he would marry her she would deed him an undivided one-half of the farm. Josephine Lombus was defaulted. The cause was heard by the court without a jury and a decree was entered granting the complainant a divorce and setting aside the deed from her to her husband.

No certificate of evidence was preserved, and plaintiffs in error contend the bill was without equity on its face and that the decree was not justified by the findings therein. It is insisted it does not appear plaintiff in error Coonce was guilty of adultery subsequent to the complainant's cohabitation with him and that no divorce should have been granted; also that the deed should not have been set aside for misconduct occurring after it was made, and that the decree does not find sufficient facts to sustain it.

The decree finds the equities of the cause are with complainant; that the allegations of the bill are sustained by the proof; that Josiah T. Coonce has committed adultery "as charged in the bill of complaint," and the marriage is decreed to be dissolved. The decree further finds the conveyance was made without any valuable consideration, the only consideration being love and affection impliedly grow-

ing out of the marital relation; that at the time it was made the parties had been living together harmoniously; that thereafter Coonce failed to keep his marriage vows but violated them and committed adultery, as found in the decree, and thereby forfeited all right to the land; that after making the deed it became known to complainant that her husband was afflicted with the incurable disease of syphilis, which fact he had concealed from her; that in obtaining the deed under the circumstances shown by the evidence it was procured through fraud and deception and in equity should be declared null and void and be set aside. It was so ordered and decreed and the temporary injunction was made perpetual.

Plaintiffs in error contend the bill does not allege, nor does the decree specifically find, the complainant's husband committed adultery after she ceased to cohabit with him, or, in other words, that she did not condone the offense by living with him after knowledge of his misconduct. The bill alleged the parties ceased to cohabit in September, 1918, and this is admitted by the answer. The bill also charges Coonce and the Lombus woman with adultery for a period of more than three years prior to the filing of the bill, and avers why complainant endured it until the commencement of the suit. The bill sufficiently alleged grounds for divorce, and as no defense of condonation was set up in the answer, the finding in the decree that Coonce had committed adultery "as charged in the bill of complaint" must be considered as a finding that the offense proved had not been condoned. In *Duberstein* v. *Duberstein,* 171 Ill. 133, the court held condonation is not so strict a bar against a wife as against the husband, because the wife may find it difficult to quit the common domicile and often submits through necessity. The bill in this case alleges the reasons why complainant submitted to the misconduct of her husband until she could endure it no longer, and we consider the findings in the decree on that question sufficient.

On the question of setting aside the deed plaintiffs in error cite *Fischer* v. *Fischer,* 245 Ill. 426. In that case a husband yielded to the importunities of his wife and conveyed to her his homestead on her promise to treat him kindly and make his home peaceable and happy. After securing the deed she treated him harshly and unkindly and procured a man named Schmidt to live in the family and work on the farm, with whom the wife became intimate. He supplanted the husband and joined with the wife in abusive treatment of him, compelling him to leave home, and the wife and Schmidt continued to live in the home in adulterous relations. The husband filed a bill for divorce on the ground of adultery and to set aside the deed. He was granted a divorce but the prayer of his bill that the deed be set aside was denied, and he sued out a writ of error to review the decree. No question was raised as to the decree for divorce. This court reversed the decree and remanded the case, with directions to set aside the deed. The court said, in substance, that the marriage relation affords no immunity from the consequences of fraud practiced by either upon the other; that the relation of husband and wife is so intimate and confidential, courts of equity will scrutinize with care transactions between them where there are any reasonable grounds to suspect fraud has been practiced by either upon the other; that a conveyance by the husband to the wife is valid if made freely and without any fraud; that if the transaction was fair and honest, subsequent misconduct of the wife "not in contemplation at the time of the conveyance would probably not warrant a court of equity in decreeing a cancellation of the conveyance. If, however, the transfer is procured by the wife and is attended with circumstances from which it can be reasonably inferred that she contemplated an abandonment of her marital duties after securing such conveyance, a court of equity will grant relief and restore the property to the husband." We are of the opinion the

facts alleged in this bill and found by the decree to be true justified the court in setting aside the deed. The facts alleged in the bill, and which the court found to be true, to our minds preclude any rational inference that the deed was obtained from complainant in good faith and without any thought or contemplation of misconduct of the grantee afterward.

We have set out the bill at great length, also the answer and the material findings in the decree, and do not regard further discussion in this opinion necessary.

The decree is affirmed.

*Decree affirmed.*

---

(No. 13602.—Reversed and remanded.)
W. N. SIEVERS *et al.* Appellees, *vs.* JOHN HANNAH, Appellant.

*Opinion filed February 15, 1921—Rehearing denied April 7, 1921.*

1. ELECTIONS—*elector must indicate his vote by a cross.* Under the statute an elector must indicate his vote by making a cross either in the circle at the head of the ticket or in the square to the left of the name of a candidate, whether such name is printed or is written in in a blank space; and a ballot containing no cross cannot be counted.