(No. 35038.—

SHIRLEY J. PECK, Appellant, *vs.* PAUL N. PECK *et al.*— (PAUL N. PECK, Appellee, *vs.* SHIRLEY J. PECK, Appellant.)

*Opinion filed March 20, 1959.*

ROBERT M. BELL, of Rock Island, and JOHN M. KER-
WIN, of East Moline, for appellant.

DANIEL J. ROBERTS, and BARASH & STOERZBACH, both of Galesburg, for appellee.

Mr. CHIEF JUSTICE DAILY delivered the opinion of the court:

Shirley J. Peck and Paul N. Peck have filed an appeal and cross appeal respectively, from a decree of the circuit court of Knox County which adjudicated their marital status, fixed the custody of a child, and determined certain property rights between them. A freehold is involved so as to give us jurisdiction of a direct appeal.

Pertinent factual background shows that the Pecks were married in March, 1950, and that one child was born to such union. Paul, who was the owner and operator of a drive-in restaurant, had previously been married to one Betty Peck, from whom he was divorced in 1948, and had custody of a son born of that marriage. Shirley Peck was a waitress in the restaurant and continued her employment there after the marriage. A rift developed between the couple in 1952 when Paul filed a complaint for divorce charging adultery and Shirley filed a counterclaim charging cruelty, but they became reconciled and the causes of action were dismissed early in 1953. At the time of the marriage Paul was the owner of lots 255 and 258 in Prospect Heights Addition to the city of Galesburg, the first being improved with a residence in which the couple made their home and the second with a portion of the drive-in restaurant. Subsequent to the marriage, title to lots 256, 257 and 212 was acquired in the name of Paul alone, while title to lots 213 and 214 was acquired in the names of Paul and Shirley as joint tenants. Lots 213 and 214 are vacant, while lots 256, 257 and 212 are being used in conjunction with the restaurant. In the fall of 1953 Paul and Shirley consulted an attorney concerning the property and, shortly thereafter, deeds were executed which made them joint tenants of all seven lots. At the same time Paul and Shirley executed

separate wills. The will of Paul left his property to Shirley at his death, but in the event both died in a common disaster, his estate was left in trust for his children. The will of Shirley, on the other hand, left her entire estate to Paul but in the event of simultaneous death her entire estate was left in trust for the benefit of her child.

Paul and Shirley continued to work and live together until June 14, 1956, when Shirley left taking her clothing and their child. Both agree that she left after a quarrel, but whether she was ordered to do so or left of her own accord is a point in conflict. Six weeks later Paul took the child off the street a short distance from where Shirley was residing with an aunt and, although he thereafter kept the child in his custody, it was his testimony, categorically denied by Shirley, that he informed her she could arrange to visit the child at any time.

Six weeks after the separation, on July 31, 1956, Shirley, alleging ownership of an undivided one-half interest, filed a complaint for partition of the seven lots heretofore described. Paul filed an answer in which he admitted the conveyance to Shirley, but denied her right to partition, and alleged by way of counterclaim that Shirley held her title in trust for him by reason of the fact the conveyance had been for the sole purpose of protecting his title from Betty Peck, Paul's first wife, in the event Paul should die and Betty be named as guardian for the minor son born to their marriage. Shirley denied the latter averments. On September 14, 1956, Paul filed a motion for leave to file an amendment to his answer and counterclaim and for leave to file a counterclaim for divorce. When Shirley resisted the motion, alleging among other things that the "sixty-day" provision of the Divorce Act had not been complied with, the chancellor, on September 24, 1956, denied leave to file a counterclaim for divorce but did permit Paul to amend the answer and counterclaim already filed. The latter amendment charged Shirley with fraud, alleging in

substance that the conveyance to her had been made after the divorce action of 1952 had been dismissed in contemplation that she would refrain from her adulterous conduct and resume her marital duties, but that she had in fact continued her adulterous conduct with certain persons on certain dates after the conveyance had been made to her. Shirley's reply likewise denied these allegations.

On November 8, 1956, as the result of a motion by Shirley, the partition action was referred to a master to hear and report the evidence together with his findings and conclusions thereon. Evidence was taken in the months of March, April and May, 1957, and while it is Shirley's contention that the proof was completed on May 15, 1957, she concedes and the record shows that the proof was not closed. It should be noted at this time also that the master, over Shirley's objections, heard evidence of her adulterous conduct during the hearing on the partition suit.

Paul N. Peck, as plaintiff, filed a *praecipe* for summons under the Divorce Act on September 24, 1956, an action which apparently followed his unsuccessful efforts to file a counterclaim for divorce in the partition suit. Shirley Peck was served and entered her appearance on September 26, 1956. Sixty days following the *praecipe,* on November 24, 1956, Paul filed a complaint for a divorce and custody of the child, in which he pleaded charges of adultery against Shirley which paralleled the charges of adultery forming the basis of his claim of fraud in the partition suit. On May 13, 1957, after a motion to strike the complaint for a divorce had been denied, Shirley filed an answer and a counterclaim to the divorce action wherein she sought a divorce on the grounds of cruelty. Additionally, she claimed and sought a dissolution of a partnership in the drive-in restaurant, prayed for an accounting of the profits of the partnership, for the appointment of a receiver over the partnership assets, for custody and support of the child, and for alimony, costs and attorney fees. Thereafter, on

May 17, 1957, Paul filed a motion to consolidate the two causes of action and such motion was allowed on June 3, 1957. By an accompanying order the chancellor referred the cause, as consolidated, to the same master and ordered that evidence theretofore taken in the partition suit be considered as having been taken in the consolidated cause.

Hearings on the consolidated cause commenced on June 18, 1957, and were concluded on June 20, 1957. During this period Paul offered no further evidence of adultery other than that already received in the partition suit and the bulk of the testimony related to Shirley's counterclaim for a divorce and to her claim of a partnership. Subsequently, in the consolidated cause, the master found that Paul was entitled to a divorce and custody of the minor child; that Shirley and Paul each owned an undivided one-half interest in the real estate and that partition should be granted; that Paul was entitled to an estate of homestead; and that Shirley had no right, title or interest in the restaurant business. After objections and exceptions of both parties had been disposed of, the chancellor entered a decree substantially in conformity with the master's findings, the one exception being that he did not order partition of the real estate. Instead, the decree found that a great loss and hardship to Paul would result from a public sale of the premises, and directed that a determination of the fair market value, mortgages, liens and other indebtedness should be made and that Paul should pay to Shirley one-half the market value after the deduction of all liens, mortgages, other indebtedness and homestead. Concluding, the decree provided that if Paul did not make such payment within ten days after the value was determined, the real estate should be sold "as in partition." Both parties have appealed from the aspects of the decree unfavorable to them and, for convenience, we shall hereinafter refer to Shirley J. Peck as appellant and to Paul N. Peck as appellee.

The first contention raised by appellant is that the chancellor erred in permitting the partition and divorce actions to be consolidated. Section 51 of the Civil Practice Act provides: "An action may be severed, and actions pending in the same court may be consolidated, as an aid to convenience, whenever it can be done without prejudice to a substantial right." (Ill. Rev. Stat. 1955, chap. 110, par. 51.) In construing this statute, and its predecessors, we have held that the consolidation of separate causes for trial is discretionary with the trial court and our courts have found no abuse of discretion where the separate causes are of the same nature, arise from the same act, event or transaction, involve the same or like issues, and depend largely or substantially upon the same evidence, and when a joint trial will not give one party an undue advantage or prejudice the substantial rights of any party. (See: *Black Hawk Motor Transit Co. v. Illinois Commerce Com.* 383 Ill. 57; 34 I.L.P., Trial, sec. 4.) Here the consolidating order specifically found that common questions of law and fact existed in both causes, that it would be a convenience to all parties to have their rights determined in one hearing, and that no rights would be prejudiced by the consolidation of the actions.

Appellant does not contend to the contrary under this point but asserts only that the law requires that an application for consolidation must always be made before the trial of either cause of action has commenced. While it may be agreed that the application must be timely, we do not find that the inflexible rule contended for exists. As authority for her position appellant has cited *Shooters Island Shipyard Co. v. Standard Shipbuilding Corp.* (3rd cir.) 4 F.2d 101, *Eckenooth v. Egan,* (Sup. Ct.) 46 N.Y.S. 666, and *Needham Piano and Organ Co. v. Hollingsworth,* 91 Tex. 49, 40 S.W. 750. In each case, however, it appears that neither the parties nor the proof were the same in the

separate causes of action, and consolidation was denied, where trial had commenced in one of the separate causes, on the theory that all parties to a consolidated cause had the right to participate in the entire trial. Similar factual circumstances do not exist in the present case. Moreover, there are still other authorities which state that consolidation may be affected at any step in the cause, (*Baker* v. *Rowe,* 102 Fla. 622, 136 So. 681; 1 C.J.S., Actions, sec. 112b(3),) and we note that the commencement of one of the actions was found to be no bar to consolidation in *Miller* v. *Miller,* 376 Ill. 628, and *MacGregor* v. *Johnson-Cowdin-Emmerich, Inc.* (2d cir.) 31 F.2d 270. The true answer, we believe, is not to be found in the fixing of an inflexible rule, but in a proper interpretation and application of section 51 of the Civil Practice Act which, admittedly, is patterned after section 96 of the New York Civil Practice Act.

Consolidation, it has been said, makes for expedition, conservation of the time of the court, avoids duplication of effort, and saves unnecessary expense. (*Consolidated Dairy Products Co.* v. *Loft, Inc.,* 155 Misc. 771, 280 N.Y.S. 935; *Borman* v. *Oetzell,* 382 Ill. 110.) These, then, are the purposes to be achieved by section 51, and the only precaution imposed by the statute is that substantial rights be not prejudiced. (*Goldey* v. *Bierman,* 201 App. Div. 527, 194 N.Y.S. 373; McCaskill, Illinois Civil Practice Act Annotated, pp. 127-128.) "Within the limits of this anomaly, however, there should be such liberal construction as to simplify practice and expedite justice in so far as the power lies within the courts so to do." (*Hurley* v. *Rose,* 236 App. Div. 517, 260 N.Y.S. 67.) In light of these principles, and the liberal purposes of the Civil Practice Act, it is our view that consolidation may be effected even though one cause has commenced, when the court finds it reasonable and convenient to do so, and provided, of course, that substantial rights will not be prejudiced. Unless such prejudice did result in

the instant case, the chancellor committed no error in permitting consolidation when he did.

Appellant next contends, however, that she was substantially prejudiced by that portion of the consolidating order which directed that evidence theretofore taken in the partition action should be considered as evidence taken in the consolidated cause. The record reveals, however, that the acts of adultery which formed the basis for a charge of fraud in the partition action were the same acts upon which appellee predicated his prayer for divorce and were therefore subject to identical proof by identical witnesses. Counsel for appellant cross-examined the adultery witnesses at length and, although it is now contended that cross-examination would have been conducted along different lines had the question of divorce been present, we are not informed wherein any substantial rights were prejudiced. It is also now stated that evidence "might very well have been produced to rebut" the testimony of the adultery witnesses. The record shows, however, that appellant did in fact present her aunt as a witness to rebut one of the charges of adultery, and no reason suggests itself why she was not at liberty to introduce further evidence of such nature, if any she had, when the hearing was resumed in the consolidated cause. Within this point appellant also attacks the propriety of the chancellor's order on the basis of authorities which hold that testimony given in a former action is, except in instances of death, inadmissible in a subsequent action. (*George* v. *Moorhead,* 399 Ill. 497; *London Guarantee and Accident Co.* v. *American Cereal Co.* 251 Ill. 123.) Such a position misapprehends that the effect of consolidation was to try the two suits at the same time. Cf. *Lutticke* v. *Lutticke,* 406 Ill. 181.

Throughout the hearing, the master made no rulings on certain objections to evidence but, as was the practice in Knox County, admitted the evidence subject to the objec-

tions. Appellant insists this practice was erroneous and that some of the evidence admitted was incompetent. Where a cause is referred to a master to take the testimony and report his conclusions on the law and facts, he is usually governed by the ordinary rules of evidence by which a court would be governed, and he should hear and exclude evidence as if the hearing were before the court. It is equally true, however, that unless the evidence is clearly inadmissible, the better practice is for the master to receive it subject to objections, so that it may be considered without re-reference of the cause in the event the court should deem it admissible. (*Wylie* v. *Bushnell*, 277 Ill. 484; 7 I.L.P., Chancery, sec. 413.) Insofar as the rulings here complained of are concerned, it would appear that the master did no more than to follow the accepted practice. Moreover, it may also be added that the question of the master's rulings is not properly before us for review. To take advantage on review of alleged errors in the admission of evidence before a master, it is necessary to object before the master by including the objection in the objections filed to the master's report, and to renew it before the court as an exception to the master's report. (*Dunlavy* v. *Lowrie*, 372 Ill. 622; Cleary, Handbook of Illinois Evidence, sec. 1.16.) An alternative method of preserving such questions of evidence for review is to obtain a ruling of the court by motion while the case is still pending before the master. (*Northern Trust Co.* v. *Sanford*, 308 Ill. 381.) Neither procedure was pursued by the appellant in this case, with the result that the point was never brought to the attention of the chancellor or passed upon by him.

The next contention advanced by appellant is that she should have been granted a divorce under her counterclaim charging appellee with extreme and repeated cruelty. Such a position is erroneously based, however, upon the premise that the testimony of adultery given in the partition hearing could not stand as proof of the identical charges of

adultery in the consolidated action. What has been previously said disposes of this objection. Furthermore, although Illinois recognizes the principle of recrimination which permits a defendant to show that a plaintiff is also guilty of such misconduct as would entitle the defendant to a divorce, adultery is an exception in that other grounds, such as cruelty, will not bar a divorce for adultery. (*Zimmerman* v. *Zimmerman,* 242 Ill. 552; see also *Gordon* v. *Gordon,* 141 Ill. 160; *Nesheim* v. *Nesheim,* 293 Ill. App. 257.) While the Appellate Court case of *Grady* v. *Grady,* 266 Ill. App. 277, reached a contrary conclusion, we do not find that review was sought in this court and note that the result caused one writer to observe that "the court apparently made a little new law to take care of the situation." (42 I.B.J. p. 396, at 400.) No circumstances in the present case prompt a departure from the rule.

Contention is also made by appellant that the findings to the effect that she was guilty of adultery and that she was not a fit and proper person to have the care and custody of the six-year-old son are against the manifest weight of the evidence. We do not believe that a detailed recitation of the facts upon which these findings are based would serve any useful purpose in this opinion. Suffice it to say that we have made a critical examination of the record as a whole and of the specific proof to which the appellant refers. In such a case as this it is the province of the master in the first instance to determine the facts and, while his findings do not carry the same weight as those of a jury, or of a chancellor where the witnesses have testified before him, his findings are entitled to due weight on appeal and a reviewing court is not justified in disturbing them unless they are manifestly against the weight of the evidence. (*Johnson* v. *Johnson,* 1 Ill.2d 319; *Maley* v. *Burns,* 6 Ill.2d 11.) Here, as did the chancellor below, we find ample proof to support and justify the findings of the master in these respects. On the state of the record, therefore, there

is no justification for a disturbance of those findings. We are not unmindful of the principle that the best interests of a minor child must be primarily consulted in awarding custody of such child, (*Cohn* v. *Scott*, 231 Ill. 556,) or of the recognition given to the truism that "maternal affection is more active and better adapted to the care of the child." (*Nye* v. *Nye*, 411 Ill. 408, 414.) In this case, however, there is nothing in the record to indicate that the best interests of the child will not be just as well served by living with his father as with his mother. On the other hand, if appellant's past conduct and apparent dislike for the confining duties of motherhood are to serve as a guide, there is support for the conclusion that the findings below were prompted by the best interests of the child.

It is the settled law of this State that, as between the parties, the existence of a partnership relation is a question of intention to be gathered from all the facts and circumstances. (*Goacher* v. *Bates*, 280 Ill. 372.) Written articles of agreement are not necessary, for a partnership may exist under a verbal agreement, and circumstances may be sufficient to establish such an agreement. (*Rizzo* v. *Rizzo*, 3 Ill.2d 291; *Einsweiler* v. *Einsweiler*, 390 Ill. 286.) The requisites of a partnership are that the parties must have joined together to carry on a trade or venture for their common benefit, each contributing property or services, and having a community of interest in the profits. (*Parish* v. *Bainum*, 306 Ill. 618; Ill. Rev. Stat. 1951, chap. 106½, par. 6.) Relying principally upon *Heyman* v. *Heyman*, 210 Ill. 524, and *Kurtz* v. *Kurtz*, 10 Ill. App. 2d 310, wherein the existence of partnerships between husband and wife were implied from the facts and circumstances, appellant contends the chancellor erred when he found that no partnership existed in this case. We do not find, however, that the circumstances here are as persuasive or compelling as those in the authorities relied upon. In the *Kurtz case* the proof showed not only that the wife had contributed

60 per cent of the initial capital for the business, but also that a decree divorcing the parties had set forth a property settlement agreement wherein the husband agreed that she was to have a one-half interest in the business he operated. In the *Heyman case,* wherein both the husband and wife claimed to be the sole proprietors of the business, a partnership was implied from proof which showed the wife had furnished capital, that both devoted equal time to the business, that the husband held his wife out as his partner, that the business was conducted under the name of "S. Heyman & Co." and that, although the dominant management of the business was in the husband, segments of the business had in fact been conducted solely in the wife's name from time to time prior to the divorce. Here the appellee and his brothers started operating the restaurant in 1946, and on January 1, 1949, approximately 15 months before his marriage to appellant, the appellee acquired his brothers' interests and became the sole proprietor. Thereafter, during the period of his marriage to appellant, the operation of the business was generally in the name of the appellee alone. No personal funds of the appellant went into the acquisition or establishment of the business and there is no proof that she was ever held out as a partner or part owner, it appearing that her duties were much the same as they were prior to the marriage. It is true that appellant worked increased hours and that the gross value of the business increased after the marriage, but there is no evidence that this increase was the result of any unusual services performed by appellant. (Cf. *Sykes* v. *Sykes,* 404 Ill. 152.) On the other hand, the record shows that the restaurant was improved in 1954 and 1955 at a cost of $30,000 raised by a mortgage and that, from 1948 to 1956 appellee had borrowed sums totalling $19,000 which went into the restaurant and for which he was personally liable.

Appellant argues at length that wills executed by the parties on the occasion of the creation of the joint tenancy

in October, 1953, are also indicative of an intent to form a partnership. The language relied upon, however, is just as susceptible to a construction that appellee had no intention of relinquishing his operation and control of the restaurant until his death. When all the facts and circumstances are considered, it is our conclusion that appellant has failed to show by competent testimony that a business partnership existed in this case, or that she has proved special equities which would justify a court of equity to order that any share of the business be transferred to her.

Appellee, by his cross appeal, contends that the decree was in error insofar as it adjudged appellant to be the owner of an undivided one-half interest in the real estate, thus giving effect to the joint-tenancy deed executed in October, 1953. From the pleadings and the arguments presented to this court, it appears that appellee is relying upon three separate theories. First, that the parties did not intend appellant would be vested with absolute ownership; second, that special equities justify a decree ordering appellant to reconvey her interest to appellee; and, third, that the deed making appellant a joint tenant was procured by fraud. As regards the first theory, which is presented but briefly and without citation of authority, appellee asserts that the only purpose for the creation of the joint tenancy was to protect the title to the real estate for his children in the event he predeceased his first wife, that appellant was fully aware of the deed's limited purpose and did not intend to acquire absolute ownership, and that she therefore holds her title in trust for him. There is no proof of such trust, other than the testimony of appellee, thus his contention is sufficiently overcome by pointing out that express trusts in land may not be created by parol. Ill. Rev. Stat. 1955, chap. 59, par. 9; *Pollard* v. *Pollard,* 12 Ill.2d 441.

Appellee's second theory is bottomed upon section 17 of the Divorce Act (Ill. Rev. Stat. 1955, chap. 40, par. 18,) whereby the chancellor is empowered, whenever it appears

that either party holds title equitably belonging to another, to compel the conveyance thereof to the party entitled thereto on such terms as he deems equitable. To justify such a conveyance, however, it is also well established that where special equities are claimed they must be alleged and proved, and that relief can be granted only in accordance with the allegations of the complaint sustained by the proof. (*Skoronski* v. *Skoronski*, 395 Ill. 301; *Podgornik* v. *Podgornik*, 392 Ill. 124.) In the present case appellee's complaint for divorce, as amended, alleges no special equities. All that is alleged, rather, is that appellee acquired the property in question with his own funds and that his wife committed adultery. Where a wife is given title to property purchased in whole or in part from a husband's funds, there is a presumption of a gift from the husband to the wife, (*Stevens* v. *Stevens*, 14 Ill.2d 99; *Pollard* v. *Pollard*, 12 Ill.2d 441,) and the circumstance that the husband paid the purchase price does not, in the absence of anything more, make him the equitable owner of her interest. (*Lutticke* v. *Lutticke*, 406 Ill. 181.) Property voluntarily conveyed by a husband to his wife, without fraud or coercion, becomes the wife's separate property and, notwithstanding the husband purchased the property with his own money, the wife may hold the property against him. (*McComb* v. *McComb*, 241 Ill. 453.) The amended divorce complaint alleges no special equities in appellee, and we agree with the chancellor that the proof failed to overcome the presumption of gift. Nor, in the absence of fraud or coercion, do the allegations of adultery in the amended complaint entitle appellee to any special equities in the property he conveyed to his wife. If the transaction is fair and honest and made in good faith, subsequent acts of misconduct do not warrant a court of equity in decreeing a cancellation of the conveyance. (*Arliskas* v. *Arliskas*, 343 Ill. 112.) On the state of the pleadings in the divorce action, it is our opinion that the powers bestowed upon the

chancellor by section 17 of the Divorce Act were not invoked. Cf. *Walsh* v. *Walsh,* 372 Ill. 254.

In his amended counterclaim to appellant's complaint for partition, appellee alleged that appellant had procured her joint tenant's interest by fraud and prayed that she be compelled to reconvey the premises to him. Appellee now insists that the chancellor erred in denying him relief on this ground. Briefly, it is the theory of the counterclaim in question that the joint tenancy in the real estate was created as a result and part of the reconciliation effected after each had filed complaints for divorce in 1952, that appellant, for the sole purpose of obtaining pecuniary advantage, induced appellee to make the conveyance by pleas, entreaties and promises that she would be faithful in the future, but, that appellant never contemplated the resumption of her marital duties and thereafter continued her adulterous conduct, thus perpetrating a fraud on appellee which entitles him to a reconveyance. While the facts pleaded have, in some instances, been held a sufficient basis for the relief prayed, (*Fischer* v. *Fischer,* 245 Ill. 426; *Coonce* v. *Coonce,* 296 Ill. 585; *Walsh* v. *Walsh,* 372 Ill. 254,) an examination of the evidence in this cause discloses insufficient proof to support the charge of fraud. While there is some evidence that appellant's conduct was discussed both before and after the reconciliation, there is no direct proof that the execution of the deed was predicated upon any promise of appellant. It is to be noted too that the deed creating the joint tenancy was executed exactly one year after the reconciliation had been effected, thus raising doubt as to whether the reconciliation was in any manner conditioned upon the execution of the deed. More important, however, is the lack of proof that appellant had been guilty of adulterous conduct prior to the execution of the deed. The only proof of adultery relates to acts occurring approximately three years after the conveyance was made and at a time when the parties had become completely estranged and this liti-

gation commenced. In the two-and-one-half-year interim between the execution of the deed and the final separation of the parties, appellant worked faithfully in the restaurant every day and there is extreme conflict on the question of whether or not she properly fulfilled her duties of a wife and mother. On the evidence presented we cannot say either that appellant induced the deed, or that she contemplated an abandonment of her marital duties after securing such conveyance.

After finding appellee and appellant each own an undivided one-half interest of the real estate, the decree then made the following provision with regard to its sale: "The business established and operated upon said real estate is an integral part thereof and can be removed only at a great loss, and to require a public sale of said real estate would be manifestly unfair to the owner of said business, forcing him to meet bids on said property; that a determination of the fair market value of said property and of the mortgage, liens and other indebtedness should be made; that Paul N. Peck should pay to Shirley J. Peck one-half (½) the fair market value thereof after deduction of all mortgages, liens and other indebtedness and homestead within 10 days such value shall have been determined, and that in default thereof said real estate be sold as in partition." While it could be noted that the decree is incomplete in that it fails to direct who shall determine the value of the land, we agree with appellant that it was completely improper in this case. The right to partition is imperative and completely binding upon courts of equity where a case is fairly brought within the law authorizing such proceeding. (*Murphy* v. *Murphy*, 343 Ill. 234; *Hill* v. *Reno*, 112 Ill. 154.) The object of partition is to enable those who own property in common to sever their interests, so that each one may take possession of, enjoy, and improve his separate estate at his own pleasure. (*Mechling* v. *Meyers*, 284 Ill. 484; *Bowman* v. *Austin*, 393 Ill. 593.) The law favors a division of land in kind,

rather than a division of the proceeds of a sale thereof, and a sale under partition is proper only where a division of the premises cannot be made without prejudice to the rights of the interested parties. (*Kloss* v. *Wylezalek,* 207 Ill. 328; *Bowman* v. *Austin,* 393 Ill. 593; see: 68 C.J.S., Partition, sec. 125; 143 A.L.R. 1087.) To implement this policy our statute provides for the appointment of commissioners to determine whether property is susceptible of division, (Ill. Rev. Stat. 1955, chap. 106, pars. 49 and 51,) and in construing such statute this court has said: "* * * whether the proceeding for partition is by petition under the statute or by bill in chancery, an essential prerequisite to a decree authorizing a sale is the appointment of commissioners to make partition, and a report by them that the land is not susceptible of partition; * * * section 16 of the Partition Act is mandatory, and * * * where partition is sought by either mode, a decree for sale is erroneous, unless based upon a report of commissioners." (*Coffin* v. *Argo,* 134 Ill. 276, at 278; see also *Rohn* v. *Harris,* 130 Ill. 525.) Considering these established principles it is manifest that the court was in error in directing a sale of appellant's interest in the manner prescribed.

Although it has been stated that a court of equity will not permit a partition proceeding to be used to circumvent established principles of law or public policy, (*Bydalek* v. *Bydalek,* 396 Ill. 65; *Brod* v. *Brod,* 390 Ill. 312,) appellee established no special or superior equities, and the decree refers to none,which would serve as an equitable basis for denying appellant her right to partition. Instead the decree refers only to inconvenience and possible hardship that may result to appellee from the change in the relations of the parties to the estate. We find the rule to be, however, that in the absence of statutory provision to the contrary, the absolute right to partition yields to no consideration of hardship, inconvenience or difficulty. (*Hill* v. *Reno,* 112 Ill. 154; Tiffany, Real Property, 2d ed., vol. 1, sec. 204, pp. 710-711;

68 C.J.S., Partition, sec. 48 and cases there cited.) Accordingly, it is our view that this cause must be remanded to the trial court for the entry of a decree in conformity with our statute and appellant's right to partition.

Concluding the numerous assignments of error, appellant contends that the court erred when it found that appellee was entitled to an estate of homestead. Her arguments and conclusions are, however, predicated upon the erroneous decree. We think it clear that appellant forfeited her homestead interest and that appellee, if a sale proves necessary, is entitled to have the entire value of the homestead set off to him before equal division of the proceeds is made. *Wiegand* v. *Wiegand,* 410 Ill. 533; *Brod* v. *Brod,* 390 Ill. 312.

For the reasons stated the decree of the circuit court of Knox County is reversed insofar as it orders appellant to sell her undivided one-half interest in the real estate to appellee, but is affirmed in all other respects. Accordingly, the cause is remanded to that court for the entry of a further decree in conformity with the views expressed herein.

*Affirmed in part and reversed in part*
*and remanded, with directions.*