TOWN OF SEARSBURG v. TOWN OF WOODFORD.

January Term, 1904.

Present: ROWELL, C. J., TYLER, MUNSON, START, WATSON, STAFFORD, and HASELTON, JJ.

Opinion filed May 21, 1904.

*Towns—Boundaries—Prescription Line—V. S. Chap. 140.*

Although the lines of our states cannot be changed by prescription or otherwise, without the consent of Congress, if thereby the political power and influence of the state enlarged would be increased, yet, where the running of a boundary line has no such effect, a line may be established by prescription, though variant from the original grant.

The proceeding given by V. S. Chap. 140, for establishing town lines, confines this Court to locating and establishing the true division line,—the charter line—between the towns.

It is doubtful whether, under the Constitution of this State, the Legislature can confer upon the judiciary the power to establish any division line between towns other than the charter line.

PETITION brought to the Supreme Court for Bennington County at its October Term, 1901, under V. S. Chap. 140, for the establishment of the division line between the towns of Searsburg and Woodford. Heard at the January Term, 1904, on report of commissioners. The opinion states the facts.

*O. E. Butterfield* and *Waterman & Martin* for the petitioner.

The authority of the commissioners is confined to locating the charter line. *Elphick* v. *Hoffman,* 49 Conn. 331.

The rule as to prescriptive rights does not apply to towns or other political bodies. *R. I.* v. *Mass.,* 15 Pet. 233; *Hacker* v. *Sterling,* 36 Pa. St. 423; *Corinth* v. *Newbury,* 13 Vt. 496;

*White* v. *Fuller,* 38 Vt. 193; *State* v. *Young,* 46 Vt. 565; *Goodman* v. *Myrick,* 5 Or. 65; *Edwards County* v. *White County,* 85 Ill. 390; *Hubbard* v. *Newton,* 52 Vt. 346; *Somerset* v. *Glastenbury,* 61 Vt. 449; *Pitman* v. *Albany,* 34 N. H. 577; *Greenville* v. *Mason,* 57 N. H. 385; *Freeman* v. *Kenney,* 15 Pick. 44; *Middleboro* v. *Taunton,* 2 Cush. 406.

There is no Statute of Limitation applying to this proceeding. *State Treasurer* v. *Weeks,* 4 Vt. 215.

*Batchelder &* '*Bates* for the petitionee.

The line so long acquiesced in should be established as the division line. *Rhode Island* v. *Massachusetts,* 4 Pet. 261; *Handon* v. *Russell,* 28 N. H. 3; *Proprietors of Enfield* v. *Day,* 2 N. H. 520; *Chatham's Petition,* 18 N. H. 227; *Wells* v. *Iron Co.,* 48 N. H. 491; *State* v. *Young,* 46 Vt. 565.

The petitioner and petitionee are in the same county, so neither the county nor the state are affected. *Kellogg* v. *Smith,* 7 Cush. 375; *Shenney* v. *Waltham,* 8 Cush. 327; *Forest River Lead Co.* v. *Salem,* 165 Mass. 193.

ROWELL, C. J. This is a petition to this Court under chapter 140 of the Vermont Statutes, for the appointment of commissioners to locate and establish the division line between said towns. Commissioners were appointed at a former term, and make their report at this term, in which they locate and establish the division line between said towns where it is fixed by their charters, "unless the court should hold as matter of law that the line to which said towns have heretofore claimed and exercised jurisdiction must control, and that the line fixed by the charters must give way to said line of claim and occupation." As to this occupation line, the commissioners find that a little over a hundred rods east of said charter line, and nearly parallel with it, there is an ancient line

of marked trees, made some hundred and thirty years ago, traceable through the town of Searsburg as they find it, and part way through the town of Readsboro on the south, and into the town of Somerset on the north; that for a great many years, and for so long a time that no witness could recollect otherwise, the parties hereto and their inhabitants have recognized said last-mentioned line as the town line, and that in Searsburg the allotments of the town were made to said line, and that Woodford had maintained the highways to said line, and placed all the land west of it in her grand list, and collected taxes thereon, and that the deeds of conveyance of lands between said lines had been recorded in the town clerk's office in Woodford, and that said easterly line had been recognized in all ways as the true town line, and had never been questioned by Searsburg in any legal proceeding until this petition was brought.

The defendant claims that Searsburg cannot now be allowed to claim that the jurisdictional line, so long acquiesced in by her, shall be rejected and the charter line set up, because Woodford has acquired a prescriptive right to the jurisdictional line, which, therefore, ought to be established as the division line.

It is undoubtedly true as a general proposition that the doctrine of prescription is applicable to boundary lines between independent states and nations as well as between individuals. *Indiana* v. *Kentucky,* 136 U. S. 479; *Virginia* v. *Tennessee,* 148 U. S. 503. But the lines of our states cannot be changed by prescription nor otherwise without the consent of Congress, if thereby the political power and influence of the state enlarged would be increased, and thus the full and free exercise of Federal authority be encroached upon. *Virginia* v. *Tennessee,* 148 U. S. 503, 520. And this consent is

necessary because the Federal Constitution provides that no state shall, without the consent of Congress, enter into any agreement or compact with another state. But the running of a boundary may have no effect upon the political influence of either state; it may simply serve to mark and define that which actually existed before, but was undefined and unmarked. In that case an agreement for running the line, or its actual survey, would in no respect displace the relation of either state to the general government, and therefore would not require the consent of Congress. In those circumstances, a line that had been run out, located, and marked upon the earth, and afterwards recognized and acquiesced in by the parties for a long time, would be conclusive, even if it were ascertained to be somewhat variant from the courses given in the original grant; and the line so established would take effect, not as an alienation of territory, but as a definition of the true and ancient boundary. *Virginia* v. *Tennessee,* 148 U. S. 503, 520, 522.

But we think that the statute under which this proceeding is brought, confines the Court to locating and establishing the true division line, the charter line, between the towns. It provides that selectmen, when instructed by a vote in town meeting to cause any "division line of the town to be located," shall notify the selectmen of other towns interested, to meet to agree upon such line; that if the line is not thus agreed upon, a petition may be brought to this Court for the appointment of commissioners "to establish the line," who shall hear the parties and "establish such line"; and that if their report is accepted, the selectmen of either town may cause it, and the judgment of the Court thereon, to be lodged for record in the clerk's office of the several towns, and that thereupon the

line so established shall be the division line between such towns.

It seems clear that the statute contemplates that the charter line is the one to be located and established; not necessarily absolutely and precisely according to the charter, which might in some cases be quite impracticable and perhaps impossible, but as nearly according to the charter as it reasonably can be. And indeed the statute received substantially that construction in *Somerset* v. *Glastenbury*, 61 Vt. 449, 17 Atl. 748. There it was objected that it was the duty of the commissioners to establish the true line, the line as originally located, and that the report should show that they had done so; but that from anything in the report they might have established the line, not where it was, but where they thought it ought to be. But the Court said they had performed the duty imposed upon them by the statute; that they had heard the parties, their witnesses and counsel, and as the result of such hearing and their own personal examination of the premises, had made up their minds as to the true location of the line and established it accordingly, which was just what the statute contemplated, and that it was hard to see how they could have followed more closely both its letter and its spirit.

A line so established would take effect, not as a transfer of territory, though somewhat variant from the charter line, but as a definition of that line.

There is another thing that makes strongly against giving the statute a broader construction. The Constitution confers upon the Legislature the power to "constitute towns, boroughs, cities, and counties," and this power necessarily includes the power to alter their boundary lines at pleasure. But this power is essentially political and governmental and not judicial, and the Constitution provides that "the legisla-

tive, executive and judiciary departments shall be separate and distinct, so that neither exercise the powers properly belonging to the other." Any substantial change of the charter boundaries of towns would necessarily enlarge or diminish their municipal jurisdiction, and to that extent would constitute an amendment of their charters. It has been held that the Legislature cannot delegate this power to the judicial courts. That the courts can determine what are the corporate limits already established, and whether what are claimed by the authorities to be such limits are such, and may inquire whether the Legislature has exceeded its authority, all which implies an existing law applicable to the matter in hand, and an administration of that law; but that for the courts to change charter boundaries would be, not to declare rights under the law, but to make a law, amending and changing a previous statute as to the extent of territory over which the particular municipal government shall obtain. *City of Galesburg* v. *Hawkinson,* 75 Ill. 152; *People* v. *Town of Nevada,* 6 Cal. 143; 1 Dill. Municip. Corp. § 183. See, also, Cooley's Const. Lim., 6th ed., 119, note 1.

It being doubtful, therefore, to say the least, whether the Legislature can delegate to the judicial courts the power materially to change the charter boundaries of towns, the statute will not be construed as intending to do that, in the absence of language clearly indicating such intent.

*Judgment that the report of the commissioners is accepted; that the charter line therein established as the division line between the towns is, and shall be, the division line between them; and that the petitioner recover its costs.*