## Town of Brookline v. Town of Newfane

[ 224 A.2d 908 ]

October Term, 1966

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 6, 1966

Reargument Denied January 5, 1967

*Kristensen, Cummings & Price,* and *Clair V. Johnson* for plaintiff.

*A. Luke Crispe* for defendant.

**Holden, C.J.** This is an appeal from a judgment ordered by the Windham County Court locating the boundary between the towns of Brookline and Newfane. The proceedings were instituted by petition of the selectmen of Brookline pursuant to the provisons of 24 V.S.A. §1461. This enactment provides:

> "When the selectmen of adjoining towns are unable to agree as to the location of a town line, one of the board of selectmen may bring a petition to the county court for the appointment of commissioners to locate such line. The court shall appoint three disinterested persons as commissioners, at least one of whom shall be a practical and competent surveyor."

Except for admitting that the selectmen of the respective towns are unable to agree in the location of their common boundary, the answer of the defendant town of Newfane denies substantially all of the plaintiff's allegations as to the true location of the town boundary. Beyond its general denial, the defendant alleges that the boundary established by the General Assembly in 1820 has been established

and accepted by the plaintiff, the defendant and the adjacent town of Putney for one hundred and forty years. The defendant joins in the plaintiff's petition for the appointment of commissioners to locate the disputed boundary as provided by Chapter 43 of Title 24, Vermont Statutes Annotated.

The commissioners were appointed with the approval of counsel for the parties. The surveyor appointed to the commission became its chairman.

In the findings of fact the commissioners stated they held a public hearing at Newfane on October 7, 1963. The commission went on to report that its findings and recommendations were based "on the exhibits and information presented at the hearing, together with the results of further investigation by the Chairman of the Commission—." The report and recommendations were signed by all commissioners.

In a separate report, signed by the chairman alone, his further investigation is explained in detail. He reported that after the hearing at Newfane his "conclusion was that I needed to make further investigation before I could make a conscientious recommendation to the Court. Both the other appointed Commissioners agreed to accept my suggestion that I get more information before making the report."

In consequence, the chairman stated he communicated with and obtained information from some eighteen persons. Beyond that, his independent search took him to the records and archives of the Vermont State Library, the Vermont Historical Society and the office of the Secretary of State. This report lists sixteen "exhibits" considered in his investigation, in addition to the exhibits presented by the parties.

The town of Newfane challenged the report and recommendations of the commissioners on the contention that it was based solely on the investigation by the chairman and not on the evidence presented. The defendant complained to the court below that it was afforded no opportunity to meet the evidence considered by the chairman.

After hearing these objections the court ordered the case remanded to the commissioners to permit the defendant to introduce further evidence. In response to this order the commission filed a supplemental report which stated that, in the opinion of the commission, the evidence presented "neither added to nor detracted from the original report and recommendations."

Over the defendant's renewed objection that only the chairman participated in the report and that it was without support in the evidence, the report was accepted. Judgment was entered on the report, establishing the boundary as recommended by the commission. The defendant appeals.

The procedural requirements for adjudicating a controversy between towns in the location of their common boundary are imposed by statute:

24 V.S.A. §1462. Procedure for ascertaining

The commissioners shall be sworn and they shall give at least thirty days' notice of the time and place of hearing by posting a notice in two public places in each town and by a citation served upon one of the selectmen of each town. They shall hear all parties interested, view the premises and recommend where the line be established, how marked and report their findings to the court. The court shall render such judgment thereon as seems just and order the same to be recorded in each town, apportion among the towns the expense of making such division line and issue execution when necessary.

The authority vested in the county courts by this and related sections of the statute, confers judicial power and responsibility. Neither legislative nor administrative functions are involved. The purpose is to achieve a judgment by the county court on the issue of fact determined by the commissioners. *Town of Searsburg* v. *Town of Woodford*, 76 Vt. 370, 374.

The reference to the commissioners constituted them a panel of referees. "Such referees shall be governed by the rules of law in the admission of evidence and determination of the issue—." 12 V.S.A. §§2041-2042. The issues are to be judicially determined—not arbitrated. *Craigue* v. *Hall*, 73 Vt. 104, 107, 50 Atl. 806 and *Gordon's Admr.* v. *Hotchkiss*, 82 Vt. 479, 481, 74 Atl. 74. Trial by reference is conducted in the same manner as trial by court. *Peck* v. *Peck*, 16 Ill. 2d 268, 157 N.E. 2d 249, 73 A.L.R. 2d 723, 733. Evidence is presented in the presence of the parties and to the full panel unless these requirements are waived. 45 Am. Jur. References §26; 76 C.J.S. References §§ 3 and 87; see also *Randall* v. *Randall*, 55 Vt. 214, 216; *Swinton* v. *Erwin*, 8 Vt. 282.

Clearly the chairman and the court misunderstood the function of the surveyor-member of the commission. As with administra-

tive tribunals, his expert and informed judgment would contribute much to the correct understanding of the technical problems in controversy. But the statutory requirement that one member of the commission be a practical and competent surveyor affords no justification for abandoning the basic demands of the judicial process.

The legislative requirement of a "hearing" implies judicial standards with faithful observance of "fundamental requirements of fairness which are the essence of due process in a proceeding of a judicial nature." *Morgan* v. *United States,* 304 U.S. 1, 19, 82 L.Ed. 1129, 1133.

The chairman's independent inquiry was an unjudicial excursion out of the presence of the parties and the other members of the commission. The interview of witnesses out of court and the examination of documents outside the evidence, made the trier of the facts in effect an unsworn witness. This action deprived the defendant of any opportunity to cross-examine or to understand what evidence it was called upon to meet or upon what consideration the findings would rest. However well intentioned, the resort to such procedure is inherently prejudicial. *State* v. *Martel,* 122 Vt. 491, 493, 177 A.2d 236; *Siebert* v. *Siebert,* 124 Vt. 187, 191, 200 A.2d 258; *Kovacs* v. *Szentis,* 130 Conn. 229, 33 A.2d 124, 126.

The report of the commissioners, thus conceived, is without judicial force or effect. Its fundamental deficiency was not cured by the recommitment and the receiving of additional evidence for the commission reported the additional evidence did not affect the result previously concluded.

Since there must be a rehearing we will consider the remaining error claimed by the defendant. It relates to the commission's refusal to consider a survey alleged to have been made pursuant to an agreement of 1829 between the towns of Putney and Brookline in which Newfane acquiesced. It does not appear that Newfane was a party. Neither does it appear that there was legislative authority for such agreements prior to 1870.

Acquiescence in a wrong boundary, whatever its duration, will not change the true division line established in the legislative grant nor cause the charter line to give way. Recognition and concurrence by the towns in a boundary at variance with a line estab-

lished by legislative grant, as a matter of law, cannot prevail over the line established by the charters. *Woodford* v. *Searsburg, supra,* 76 Vt. at 373. But this is not to say that where the true division is uncertain or obscure, historic observance of a boundary marked upon the ground, coupled with acquiescence long endured is without probative value to indicate where the charter line might be found. As with private line disputes, acquiescence alone can have no prescriptive effect nor transfer any territory. But it may have evidentiary value in the search for the location of the true boundary. *Brown* v. *Derway,* 109 Vt. 37, 43, 192 Atl. 16; *Amey* v. *Hall,* 123 Vt. 62, 67, 181 A.2d 69.

*Judgment reversed and cause remanded for a new hearing.*