### Town of Putney v. Town of Brookline

[ 225 A.2d 388 ]

December Term, 1966

Present: **Holden, C.J., Shangraw, Barney and Smith, JJ.**

Opinion Filed January 5, 1967

*John S. Burgess* for plaintiff.

*Kristensen, Cummings & Price* and *Clair V. Johnson* for defendant.

**Holden, C.J.** In July, 1959 the selectmen of Brookline petitioned the Windham County Court to locate the division line between the towns of Brookline and Putney as provided in 24 V.S.A. §1461:

> "When the selectmen of adjoining towns are unable to agree as to the location of a town line, one of the board of selectmen may bring a petition to the county court for the appointment of commissioners to locate such line. The court shall appoint three disinterested persons as commissioners, at least one of whom shall be a practical and competent surveyor."

The action advanced to the appointment of commissioners. The cause was not heard nor reported by the commissioners for the reason that a stipulation, signed by the selectmen of both towns, was submitted to the court. This agreement states:

> "It is hereby stipulated by and between the Selectmen of the Towns of Brookline and Putney as follows:
>
> 1. That the facts set forth in the Petition now on file in said cause are true and that the line between the two towns was established by the Acts of the Legislature of the State of Ver-

mont, dated October 30th, 1794 and modified by the Act of October 25th, 1804, all as set forth in the Petition in said cause.

2. That the following description concisely sets forth the line that was established by said Acts:

   'Beginning at a stake and stones 44 rods West of Westminster Southwest corner; thence running South 17 degrees West, 324 rods; thence South 47 degrees West, 32 rods; thence South 27 degrees West, 57 rods; thence South 20 degrees West, to the North line of Lot No. 8 of the 14th Range of 100-acre lots laid out in the Town of Putney prior to the aforesaid Act of 1794; thence Westwardly on said North line of said Lot No. 8, to the line established by that Act of 1794 as running to the Southwest corner of said lot; thence down said established line to said corner, which is located on the range line between the 14th and the 15th Ranges; thence Southwardly on said range line, to the Dummerston line.'

3. That the Northern part of said line Southerly to the Putney Mountain Road, so-called, has been surveyed and located and that only the Southern part of the line from said road to the Dummerston Town Line is in controversy and should be surveyed and located."

On the strength of this agreement the county court issued an order which adopted the facts set forth in the stipulation as its findings. The order also provided the means for carrying the agreement into effect, including the survey and marking of the division line.

On November 27, 1961 the Windham County Court rendered judgment. The judgment order recites:

"Upon consideration of the report made to this Court by Edwin W. Culver, surveyor, selected by the Selectmen of the towns of Brookline and Putney, who, with the assistance of the members of the Board of Selectmen of said towns, surveyed the line between the Town of Brookline and the Town of Putney, taking into consideration the change in the magnetic deviation from 1804 to the present time, and upon consideration of the representations of counsel and the Order filed in this cause on the 5th day of September, 1961, this Court renders judgment to be recorded in each of the towns that the true line between said towns as surveyed and reported to this Court by said Edwin W. Culver, surveyor,—."

The judgment order continues with the surveyor's description of the division line by metes and bounds in stated compass courses and distances to specified monuments from the north line of the Town of Putney to its southwest corner and the southeast corner of the Town of Brookline.

In June, 1963 the present proceedings were instituted (Windham County Court Docket No. 10448) by one of the selectmen of the Town of Putney. As with the prior proceeding, this petition is based under 24 V.S.A. §1461. Referring to the earlier action, it alleges that the description of the southerly end of the line lying between the two towns was incorrectly stated in the stipulation filed in the former case. It alleges that the incorrect statement, arising through either accident or mistake, did not in fact follow the description as set forth in the Act of 1804 and the Act of 1794. The petition prays for the appointment of commissioners to make recommendations as to where the southerly portion of the line between the towns of Putney and Brookline be established and marked and to report its findings to the court.

The defendant Town of Brookline in its answer denied any accident or mistake in the judgment order of 1961. The defendant's answer affirmatively pleads the prior judgment as *res judicata*.

On this state of the proceedings the parties agreed that the cause should be left with the court to determine the following question:

"Whether the Judgment Order of November 30, 1961 (*Town of Brookline* v. *Town of Putney,* Windham County Court, Docket No. 9459) relating to the boundary line as therein described, is void or voidable as a matter of law because of the lack of power of authority of the Selectmen of the Towns of Putney and Brookline to agree as to the location of the statutory or charter line between said towns, and that said Judgment Order ought to be set aside or vacated for the aforesaid reason."

Upon consideration of the pleadings and files in the prior proceeding, as well as in the instant case, the court recognized the parties and issues were identical with those of the prior action. However, it determined that the boundary between the towns, as set forth in the statutes of 1794 and 1804, did not conform with the division line described in the stipulation and judgment entered in 1961.

The court determined that the description in the stipulated judgment was the "result of an act or mistake on the part of the parties to this action." An interlocutory order was filed November 1, 1965, which vacated the survey and judgment orders of 1961. The parties were directed to proceed to locate the boundary under 24 V.S.A. §§1461-1463. The defendant seeks review of this ruling before proceeding further under the statute as directed in the order.

The plaintiff would foreclose this appeal on the contention that this ruling was a final order and the time for taking an appeal has expired. The order appealed from is in no sense a final judgment. It did not conclude the controversy. Had no appeal been taken, the present action would not have passed out of court. *Beam* v. *Fish,* 105 Vt. 96, 97, 163 Atl. 591; *Appliance Acceptance Co.* v. *Raymond,* 121 Vt. 153, 155, 151 A.2d 316. To the contrary, the ruling opened the door to relitigation of issues that were the subject of the prior proceedings. If permission to appeal had been withheld the cause would have remained in the county court for further hearings under the statute upon which the action was founded. Before the time for appealing from the ruling had expired, under Supreme Court Rule 2A, the defendant requested reconsideration and revision of the order of November 1. Accordingly, the court suspended the order and specifically extended the time for taking an appeal until the court ruled on this request.

The request was denied and the order of November 1 reinstated. Exceptions to the defendant were granted "with the right to appeal this Court's ruling to the Supreme Court." This order dated December 29, 1965, was signed by the full Court.

On January 9, 1966, the defendant filed its notice of appeal under 12 V.S.A. §2386. We suspended consideration of the appeal because of improper certification of the questions of law by the presiding judge alone, since Rule 2A requires certification by the court.

This procedural defect has since been cured. However, after argument and the amended certification, the plaintiff moved to dismiss the appeal, contending that it was not afforded a hearing on the permissive action of the lower court which passed the case here before final judgment.

12 V.S.A. §2386 requires a discretionary ruling by the court below to enable this Court to review the interlocutory order.

*Brown* v. *Brown,* 121 Vt. 283, 284, 155 A.2d 748. Unlike the *Brown* case, however, no jurisdictional question is involved, since express permission to appeal was granted by the order of the Windham County Court dated December 29, 1965. We must presume the lower court exercised its discretion in the matter since the statute required it. *Belock* v. *State Mutual Fire Insurance Co.,* 106 Vt. 435, 444, 175 Atl. 19.

■   If the plaintiff was aggrieved by the order allowing the interlocutory appeal, it should have made known its objection at the time permission was granted. Had a hearing been requested; certainly the lower court had the duty to hear the plaintiff on the point. This is equivalent protection to that which is available on request where permission to appeal is denied. See *Lyons* v. *Ross,* 124 Vt. 86, 87, 196 A.2d 576.

■   But the record here makes it entirely clear that intermediate review of the lower court's ruling on the stipulated question of law was contemplated. The court preserved that right in its orders of November 12 and December 29, 1965. Yet no objection was asserted by the plaintiff. We will not entertain such a protest now.

Seven separate questions have been certified by the lower court. All are controlled by ascertaining the power of the lower court to vacate its prior judgment of 1961.

■■   Although the lower court held this judgment to be the "result of mutual mistake, law, fact or accident," these issues were not properly before the court. They were not included in the question submitted to the lower court for decision under the stipulation upon which the court purported to act. More important, the mistakes of fact or errors in law which may have attended the first judgment are not subject to collateral attack within the framework of the present statutory action.

■■   The doctrine of finality of judgments forbids it. Only a jurisdictional defect can render a judgment void. And only the want of the court's jurisdiction over the subject matter and the parties to the judgment is open to question outside the suit wherein the judgment was rendered. Errors or irregularities in the exercise of that jurisdiction cannot be attacked. *Hammond* v. *Wilder,* 25 Vt. 342, 343; *Santerre* v. *Sylvester,* 108 Vt. 435, 437, 438, 189 Atl. 159.

These deep-rooted principles cannot be put aside by the plaintiff's prayer to open and vacate the judgment of the first action. Nor can they be avoided by invoking doubtful equitable powers in an independent action on the statute.

It is, of course, well established that in appropriate cases our courts have the power to open, vacate and correct their own judgments even after the lapse of a term. Such a procedure is available to relieve a party against the unjust operation of a record resulting from a mistake on the part of the court, rather than the fault, neglect or purposeful act of the parties. It is a discretionary power exercised with great caution. Relief may be granted or withheld as justice of the cause may require, but within the confines of the suit which composed the judgment. See *Estate of Moody,* 115 Vt. 1, 7, 49 A.2d 562; *Horicon* v. *Langlois,* 115 Vt. 81, 84; *Haven* v. *Ward Estate,* 118 Vt. 499, 502, 114 A.2d 413; 30A Am. Jur., Judgments, §853; 49 C.J.S., Judgments, §235.

We recognize, too, that courts of chancery have, upon proper showing, sometimes intervened against a judgment at law. But such interference is granted on grounds which are not directly involved in the law action. As Judge Royce pointed out—"It would be a manifest repugnancy in any system of jurisprudence, that the decisions of one ultimate and final jurisdiction should be subject to the revision and correction of another." *Fletcher* v. *Warren,* 18 Vt. 45, 48. See also *Filmore, Admr.* v. *Morgan's Estate,* 94 Vt. 87, 89, 108 Atl. 841.

The present action is not so constituted. This is an independent second action to relocate the very same division line between the same parties. This, of itself, is a tacit concession that the court in the first instance had jurisdiction of these parties and of the subject matter at issue.

The judgment which located the true line between these towns in 1961, is valid and binding on these parties until reversed on appeal or set aside by appropriate proceedings directed to that very purpose. *Kimball* v. *Town of Newport,* 47 Vt. 38, 42; *Mussey* v. *White,* 58 Vt. 45, 49; *Santerre* v. *Sylvester, supra,* 108 Vt. at 439.

The plaintiff gains no advantage from the fact that the judgment under attack was entered by consent. A final judgment or decree entered by consent and stipulation is just as conclusive on the

parties as if rendered after a contest. *Harris* v. *Harris's Estate,* 82 Vt. 199, 218, 72 Atl. 912; *Manley* v. *Johnson,* 85 Vt. 262, 266, 81 Atl. 919; *In re Estate of Cartmell,* 120 Vt. 228, 240, 138 A.2d 588.

The plaintiff seeks to protect the action of the court below on the claim that the selectmen of Putney and Brookline were without statutory or constitutional authority to agree on the boundary described in the stipulation and judgment of the first proceeding. It relies on the opinion by Chief Justice Rowell in *Town of Searsburg* v. *Town of Woodford* (1904), 76 Vt. 370, 375, 57 Atl. 961.

Under the procedure in effect at the time of that decision the Supreme Court had original jurisdiction in actions to locate and establish the true division lines between towns. V.S. Chap. 140. Under the former statute, as with our present law, resort to the judicial process was available when the selectmen of adjoining towns were presently unable to agree on the location of the town line.

The power to "constitute towns, borroughs, cities and counties—" is in the General Assembly. Vermont Constitution Ch. II, §§6, 65. And the Legislature has reserved to itself the authority to entertain petitions for altering town and county lines and the creation of new towns. 16 V.S.A. §316.

By plain implication, the General Assembly in the first instance has delegated the authority to locate,—as distinguished from altering,—the true line to the selectmen of the adjoining towns. Failing in that, the Legislature has confided the authority to locate the charter line to the county courts. 24 V.S.A. §§1461-1464. The authority of the selectmen to later agree to a settlement of this very issue is not impinged because the dispute has proceeded to litigation, particularly if the court approves the agreement. See *Town of Cabot* v. *Britt,* 36 Vt. 349, 351; *Miles* v. *Town of Albany,* 59 Vt. 79, 82.

The power delegated is to locate rather than create. But the act also recognizes that the description of ancient boundaries as defined in early charters cannot always be located with precision on the ground. In some cases this is "quite impractical and perhaps impossible—." Thus the selectmen and the courts are confined to locating the boundary—"as nearly according to the charter as it reasonably can be." *Town of Searsburg* v. *Town of Woodford, supra,* 76 Vt. at 374; *Town of Underhill* v. *Town of Jericho,* 102 Vt. 367, 369, 148 Atl. 412.

In the *Searsburg* case the commissioners' report located the division line between the towns where it was fixed by their charters,— "unless the court should hold as a matter of law that the line to which said towns have heretofore claimed and exercised jurisdiction must control—." The Court held the charter line located by the commissioners could not be changed by the acquiescent observance of another boundary on the part of the officers of the adjoining towns in exercising their respective governmental functions. See also *Town of Brookline* v.*Town of Newfane,* opinion filed at this term, 126 Vt. 179, 224 A.2d 908.

No express agreement by the selectmen under the statute was involved, much less a prior judgment locating the true line. *Searsburg* v. *Woodford* affords no authority to impeach the 1961 judgment. Such a concept is at war with the fundamental rule that a party aggrieved by a prior judgment cannot challenge the effect of that adjudication in a subsequent proceeding against the party who first prevailed. 49 C.J.S. §411.

So far as Putney and Brookline are concerned, the judgment of the Windham County Court entered in 1961 established their true division line according to their charters. Implicit in that adjudication is the decision that the location thus established does not alter the legislative grants nor transcend constitutional restrictions.

The parties here are concluded by all questions which might have been presented in the first cause. The present action for the same cause cannot be maintained. *Johnson* v. *Wells-Lamson Quarry Co.,* 103 Vt. 475, 480, 156 Atl. 681.

We find no occasion to remand for apportioning costs between the towns under 24 V.S.A. §1462, as suggested by the defendant. No survey of the division line can be ordered in this proceeding. Compare *Town of Underhill* v. *Town of Jericho, supra,* 102 Vt. at 369. Accordingly we will make final disposition in this Court as provided by 12 V.S.A. §2386.

*The order of the Windham County Court in its Docket No. 10448, dated December 29, 1965, is reversed and the petition in that cause is dismissed.*