NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 30

No. 2016-279

| | |
|---|---|
| William McLaughlin | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| Andrew Pallito | November Term, 2016 |

Timothy B. Tomasi, J.

Matthew Valerio, Defender General, and Kelly Green, Prisoners' Rights Office, Montpelier, for
 Plaintiff-Appellant.

Andrew Bolduc of McNeil, Leddy & Sheahan, P.C., Burlington, for Defendant-Appellee.


PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1.     **DOOLEY, J.** Can a prison superintendent order a second administrative hearing when a hearing panel finds a prisoner not guilty of violating a prison rule at an initial hearing because of a clerical mistake in the prison's evidence? Petitioner appeals a summary judgment decision validating a superintendent's authority to order a second hearing under these factual circumstances. We affirm.

¶ 2.     Petitioner is a prisoner in the custody of the State of Vermont. The Department of Corrections (DOC) charged him with fighting, a violation of prison rule A5. In accord with DOC Directive 410.01, the prison held a hearing on the charge against petitioner.

¶ 3. Directive 410.01 lays out an internal adjudicative process by which the DOC determines the merits of a rule-violation charge against a prisoner. This process has four steps. First, the rules require the facility superintendent to refer the charged violation for investigation by an officer uninvolved in the alleged violation incident. Vermont Department of Corrections Directive 410.01, Facility Rules and Inmate Discipline 8 http://www.doc.state.vt.us/about/policies/rpd/correctional-services-301-550/401-500-programs-security-and-supervision/410-01-facility-rules-and-inmate-discipline.pdf [https://perma.cc/9SF4-VLD3]. The investigating officer interviews the charged prisoner and any witnesses, takes written statements as appropriate, gathers other pertinent records, and prepares a report of findings for the facility superintendent. The report of findings includes a recommendation to either refer the charge for resolution, amend the charge, or dismiss the charge altogether. Id. at 8-9.

¶ 4. If the charge is referred for resolution, the rules require the superintendent to then designate a hearing officer. The hearing officer designates a presenting officer, who presents the facts relevant to the alleged violation incident at the hearing. A charged inmate is given notice of a hearing twenty-four hours in advance and is permitted to have a hearing assistant, who cannot be an attorney, help to prepare for and attend the hearing. The charged inmate is also given twenty-four hours to review the investigating officer's collected material and report. The hearing officer considers the evidence presented in the hearing and reaches one of three resolutions: not guilty, guilty of the charged violation, or guilty of a lesser or equal violation. Id. at 11-12. The hearing officer may find a charged inmate guilty only if a preponderance of the evidence supports such a finding. Id. at 11.

¶ 5. After the hearing officer reaches a resolution, the officer submits the disposition to a three-member disciplinary committee appointed by the facility superintendent. Id. at 14. The disciplinary committee reviews all evidence presented in the hearing and determines whether a preponderance of evidence supports the hearing officer's determination, as well as whether

2

procedural rules were followed and whether any imposed sanctions are proportionate to the violation found. The disciplinary committee then forwards its findings to the facility superintendent for review. Id. The superintendent's review is the final step in Directive 410.01's adjudicative process. The superintendent can take one of four actions upon review of the disciplinary committee's findings: (1) support the disciplinary committee's decision, (2) reverse the disciplinary committee's decision, (3) order a new hearing related to the alleged violation incident, or (4) reduce any sanctions imposed on the inmate. Id. Directive 410.01 does not specify the grounds under which the superintendent may order a new hearing.

¶ 6. Prison officials began investigating the A5 charge against petitioner shortly after the alleged violation incident. The investigating officer collected photographs of contusions and swelling on petitioner as well as the reporting officer's written statement. In this statement, the reporting officer wrote that he received information on September 2, 2015, that petitioner may have been involved in an assault in the gym area of the prison the previous day. But he also wrote that recorded footage showed petitioner and the other inmate allegedly involved leaving the gym area on September 2, 2015, with injuries consistent with an assault.

¶ 7. The hearing officer found petitioner not guilty of the charged violation. In his written findings, the hearing officer noted that a preponderance of evidence did not support the charge because the reporting officer's written statement was that petitioner and the second inmate returned from the gym area on September 2, 2015, but the second inmate had been moved to administrative segregation on September 1, 2015. Logically, petitioner could not be found guilty of fighting with the second inmate on September 2 if that inmate was removed from the general population on September 1. The disciplinary committee unanimously agreed with the hearing officer. The superintendent then ordered a new hearing on the charge against petitioner.

¶ 8. Prior to the second hearing, the date in the reporting officer's statement was changed. September 2 was crossed out and September 1 written in; the revised report stated that

3

petitioner and the second allegedly involved inmate were seen leaving the gym area on September 1 with injuries consistent with an assault. At this second hearing, the hearing officer found petitioner guilty of an A5 violation. The disciplinary committee and the facility superintendent upheld the hearing officer's determination.

¶ 9. Petitioner first filed an internal appeal of this determination; the superintendent again affirmed. Petitioner then sought review in superior court pursuant to Vermont Rule of Civil Procedure 75, claiming in a motion for summary judgment that collateral estoppel barred the superintendent from ordering a second hearing on the charge against him when the issue had been previously decided and no new evidence was presented. The trial court denied his motion and, with no remaining issues to litigate, dismissed his case. This appeal followed.

¶ 10. We apply the same standard as the trial court when reviewing a summary judgment decision: "Summary judgment is appropriate when there are no genuine issues of material fact and, viewing the evidence in a light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law." In re Carter, 2004 VT 21, ¶ 6, 176 Vt. 322, 848 A.2d 281; V.R.C.P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The Court reviews a dismissal for lack of subject matter jurisdiction de novo, "with all uncontroverted factual allegations of the complaint accepted as true and construed in the light most favorable to the nonmoving party." Jordan v. Agency of Transp., 166 Vt. 509, 511, 702 A.2d 58, 60 (1997).

¶ 11. As he did in his motion for summary judgment, petitioner argues on appeal that the principle of collateral estoppel operates to bar a second hearing on the charge that was tried in his initial hearing. Collateral estoppel precludes relitigation of an issue previously litigated by the same parties; a claim is precluded when five discrete criteria are present:

4

(1) it is asserted against one who was a party in the prior action; (2) the same issue was raised in the prior action; (3) the issue was resolved by a final judgment on the merits; (4) there was a full and fair opportunity to litigate the issue in the prior action; and (5) its application is fair.

In re Stormwater NPDES Petition, 2006 VT 91, ¶ 23, 180 Vt. 261, 910 A.2d 824. Applicability of collateral estoppel is a question of law, which, especially because the doctrine is outside of the agency's expertise, we address de novo. In re P.J., 2009 VT 5, ¶ 7, 185 Vt. 606, 969 A.2d 133 (mem.).

¶ 12. We need not decide whether collateral estoppel applies in the context of an inmate disciplinary proceeding. As the superior court judge ruled, there was no preexisting "final judgment" in this case, an essential element of collateral estoppel as explained above. The disciplinary procedure provides that the final decision is made by the facility superintendent, and the superintendent's decision was to order a new hearing. Thus, the real issue in this case is whether the superintendent could order a new hearing under the circumstances of the case.[*]

¶ 13. In response to petitioner's motion for summary judgment, the DOC submitted the affidavit of a disciplinary hearing officer in the correctional facility in which petitioner was incarcerated. The hearing officer's affidavit explained the superintendent's decision to grant a new hearing as follows:

> The William McLaughlin disciplinary hearing held on September 8, 2015 . . . resulted to a not guilty verdict due to [the hearing officer] not recognizing an obvious clerical error in the Incident

---

[*] The DOC has urged us to rule on this basis to affirm the trial court because petitioner narrowed his claims to the single claim that collateral estoppel prevented the superintendent from ordering a new hearing. The issues in this case have become confused by the original holding of the trial court, made orally on the record, that collateral estoppel could not apply until the Commissioner of Corrections ruled. Petitioner's brief on appeal challenged that decision even though the oral ruling was superseded by a written decision that based the nonapplicability of collateral estoppel on the decision of the superintendent. At oral argument, petitioner's counsel abandoned the argument in the brief and argued that collateral estoppel applied because the superintendent could not have granted a new hearing. In view of this change of position, we address the central argument that the superintendent could not order a new hearing, at least in the absence of new evidence.

> Report regarding the date of the incident. Upon review, the Disciplinary Committee recognized this and did not agree with the finding. This resulted in [the superintendent] ordering another hearing.

Petitioner has not disputed the contents of that affidavit.

¶ 14. Petitioner argues that the superintendent could not order a new hearing because there was no new evidence. In fact, there was new evidence at the second hearing—the amended incident report that stated that the incident giving rise to the disciplinary action occurred on September 1 and not on September 2.

¶ 15. While we recognize, as we stated above, that the DOC's disciplinary procedures do not specify the grounds upon which the superintendent has the power to order a new hearing, the ground specified in the order in this case is recognized at common law and throughout our history. See Town of Putney v. Town of Brookline, 126 Vt. 194, 201, 225 A.2d 388, 394 (1967) (acknowledging court's "power to open, vacate and correct their own judgments . . . to relieve a party against the unjust operation of a record resulting from a mistake on the part of the court"); St. Pierre v. Beauregard, 103 Vt. 258, 261, 152 A. 914, 915 (1931) (recognizing court "has the incidental power, independent of any statute, to revise and correct its records, and, if necessary, for sufficient reasons, to order a case to be brought forward after final judgment, and vacate the judgment and open the case for further proceedings"); Mosseaux v. Brigham, 19 Vt. 457, 460 (1847) (recognizing "revisory power by a court . . . to correct their records according to the truth, if erroneously made, or to relieve a party against the unjust operation of a record"). Clerical mistakes as grounds for a new hearing are now detailed in Vermont Rule of Civil Procedure 60(a) which provides:

> (a) Clerical Mistakes. Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the Supreme

6

Court, and thereafter while the appeal is pending may be so corrected with leave of the Supreme Court.

¶ 16. We see no reason to make this principle inapplicable in an administrative adjudication. Thus, while we are unwilling to rule broadly on the superintendent's power to order a new hearing, we hold that the new hearing ordered here was appropriate when it was clear that the original decision was based on a mistake in the recording of the date of the incident underlying the disciplinary action.

Affirmed.

FOR THE COURT:

_____

Associate Justice

¶ 17. **ROBINSON, J., dissenting.** The superintendent's requirement of a new hearing in this case runs afoul of the Department of Corrections' (DOC) established procedures for such cases. For that reason, I would reverse.

¶ 18. The DOC's disciplinary procedures do not authorize the superintendent to vacate an acquittal and order a new hearing because the superintendent concludes that the hearing officer and disciplinary committee made a mistake as to the merits of the disciplinary charge. The policy directive outlining the superintendent's four options on appeal (support the disciplinary committee's decision, reverse the decision, order a new hearing, or modify the sanction imposed), includes a limitation on the superintendent's authority: "Under such a review, the [s]uperintendent cannot find a more serious violation nor impose a harsher sanction than recommended by the [d]isciplinary [c]ommittee." Vermont Department of Corrections Directive 410.01, Facility Rules and Inmate Discipline 14, http://www.doc.state.vt.us/about/policies/rpd/correctional-services-301-550/401-500-programs-security-and-supervision/410-01-facility-rules-and-inmate-discipline.pdf [https://perma.cc/9SF4-VLD3]. In this case, the superintendent's actions vacating

7

the disciplinary committee's recommendation and ordering a new hearing imposed a more severe consequence for plaintiff than recommended by the disciplinary committee.

¶ 19.    The suggestion that the restriction noted above limits only the superintendent's authority to directly find a more serious violation or impose a more serious sanction, and does not limit the superintendent's authority to order repeated new hearings leading to the same result, would lead to incongruous results.  As one trial court explained, in analyzing the same issue:

> Otherwise, the [s]uperintendent could always navigate around the prohibition on finding a more serious violation or imposing a harsher sanction by choosing to order a new hearing rather than making a [direct] determination . . . . This would create a scenario where the [s]uperintendent, as the head of the hierarchical prison discipline structure, could continue to order new hearings until the desired result is achieved.  An interpretation that allows a superintendent to do indirectly what [the superintendent] could not do directly is not a reasonable interpretation of the directive.

Boyd v. Pallito, No. 205-3-11 Rdcv, slip op. at 2-3 (Vt. Dist. Ct. July 22, 2012), https://www.vermontjudiciary.org/20112015%20Tcdecisioncvl/2012-9-5-13.pdf [https://perma.cc/872Q-LLQZ].

¶ 20.    The superintendent's actions in this case ran afoul of the above limitation.  In this case, the superintendent did not identify any procedural irregularity that disadvantaged prosecution of the disciplinary charge; rather, the superintendent reviewed the hearing officer's assessment of the merits, concluded that the hearing officer had made a mistake in evaluating the charges and evidence, and ordered a new hearing—implicitly calling upon the hearing officer to reach an adjudication of guilty.  The superintendent's order squarely breached the restriction on his authority noted above.

¶ 21.    The majority's alternative analysis is unpersuasive.  In particular, the majority evades the limits on the superintendent's authority by analogizing the superintendent to a court, and pointing to a court's authority to correct clerical mistakes in its own records.  On this view, the superintendent's order for a new hearing was incident to his authority to correct a clerical

8

mistake. The analogy makes little sense. An appellate court would not remand a judgment because it concluded that the plaintiff or prosecutor made a mistake in its complaint or charging document, that the trial court erred in relying on the mistaken proffer, and that the plaintiff or prosecutor should have an opportunity to revise the document and retry a defendant. Vermont Rule of Civil Procedure 60(a), relied upon in the majority opinion to support the analogy, would not authorize such action.

¶ 22.    For the above reasons, I would reverse.


_____

Associate Justice