WILLIAM B. KEALEY, Petitioner-Appellant, *v.* HELEN D. KEALEY *et al.*, Respondents-Appellees.

Fifth District    No. 78-431

Opinion filed September 28, 1979.—Rehearing denied December 4, 1979.

Jack L. Giannini, of Belleville, for appellant.

Thomas Gumbel, of Collinsville, for appellees.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

After four years of litigation between William and Helen Kealey, husband and wife, a judgment of legal separation was entered on February 21, 1978. Shortly thereafter on April 3, 1978, the husband petitioned for partition of the heavily mortgaged jointly owned marital home, partition of which would probably result in sale. On May 17 and 19, 1978, a hearing was held regarding principally the wife's pecuniary need and the husband's ability to contribute. The husband claimed inability to pay anything at all toward the support of his family. An order was entered on May 26, 1978, in favor of the wife. In part it required the husband to pay monthly support for a 14-year-old child and maintenance to the wife each in the amount of $200, as well as the monthly mortgage of $221. The order awarded the wife exclusive use and possession of the marital residence and prohibited the husband's partition of his interest in

it. The husband moved for reconsideration of the order, and on August 1, 1978, it was amended to provide for $50 less per month each for child support and maintenance. On that same day an order was entered staying the husband's partition suit until the emancipation of the minor child or further order of the court. The husband had sought partition in order to liquidate his interest in the marital residence and thereby pay child-support arrearage found at the hearing to be $6,013, and the wife's attorney's fees determined to be $1,500. From both these orders the husband appealed. The cases were consolidated on appeal.

Two issues are raised on appeal: the first, whether the trial court abused its discretion by ordering the husband to make certain monthly payments for child support, partial maintenance and upon the marital home mortgage; the second, whether the trial court improperly ordered a stay of the husband's separately filed partition suit until the emancipation of the parties' minor child.

We have examined the record and find that it supports the order of the court below requiring the ordered payments. The husband does not dispute particularly the wife's need; he claims essentially that his own is at least as great, that their disposable incomes are so nearly equal—his, he says, being even less than hers—that it would be unfair to take from him to give to her and to the minor child.

Mrs. Kealey is a middle-aged woman who after her marriage to Mr. Kealey in 1950 did not work outside the home. Twenty-seven years later her husband stopped supporting her. She has had one year of high school, has never gone to college and has no special skills. She now works as a license examiner for the Secretary of State and takes home $349 twice a month. The Kealeys had four children, a daughter now married and three sons who live with their mother. The minor provides none of his own support. A boy, age 19 at the time of the hearing, attends college and works part-time to pay for all his expenses except room and board. He could not afford to go to college if he had to live away from home. A son, age 21, works and pays his mother $30 weekly for room and board. Mrs. Kealey's average monthly expenses are approximately $1,350. She can expect to spend $650 more than she earns each month. With the eldest son's contribution the deficit is reduced to $530.

Mr. Kealey is an accountant who at one point in the protracted litigation suffered financial reversal during a serious illness and a criminal prosecution which ended in acquittal. His is a sole proprietorship, established in 1953, which operates in the black. Mr. Kealey's position throughout the hearing was that $8,190.90 out of an adjusted gross income of $10,575.59, declared in his 1977 income tax return, represented his entire disposable or spendable income out of gross receipts of $49,257 from his business together with an additional $5,100 earned as an

employee of a friend. On cross-examination of Mr. Kealey it became apparent that he derives personal benefits from deductions he makes for business expenses which effectively increase the amount of his disposable income. He purchases a substantial number of his meals at private clubs, for example, deducting 100 percent of the cost of membership dues for such clubs as a business expense, for an annual total of approximately $925. In addition he regularly deducts a flat rate of 35 percent of the expenditures he makes at the clubs over and above the cost of membership under "promotional" expenses of his business. In 1977 the amount of the "promotional" expenses deduction was $1,285.32. Mr. Kealey does not keep a record of those persons he entertains or how much he spends on them. He stated that he is a member of the Missouri Athletic Club, the Stadium Club, the Elk's Club, the Exchange Club, the Quarterback Club, the Knights of Columbus and the Playboy Club.

To arrive at his adjusted gross income in 1977 Mr. Kealey also deducted the monthly house payment of $221, paid pursuant first to a decree of May 16, 1975, and later to an order of June 21, 1977, as "alimony." The house payment deduction is misleading because at issue is the amount of Mr. Kealey's disposable or spendable income which remains after he pays his regular monthly living expenses. That amount remaining, he says, is what might be spared for the care of his family. He claims to have disposable income in the amount of only $680 each month, calculated from his annual adjusted gross income, out of which must be paid living expenses he claims of $500. The amount of the house payment qualifies as disposable income, however Mr. Kealey chooses to designate it on his income tax return. That amount alone increases his disposable monthly income to $901. Further, the amount of $500 for monthly living expenses includes food expenses of approximately $200 and automobile expenses of approximately $50. Mr. Kealey takes about half of his meals at the clubs, and the $500 figure does not reflect the benefit of the "promotional" expenses deduction described above. Mr. Kealey deducted as a business expense over $2,100 for the operation of his automobile. That figure respresents 75 percent of his annual expenses on a vehicle fully paid for in the operation of a business that did not appear to require any particular travel. Mr. Kealey was not able to give an estimate of annual mileage. His combined automobile, business and personal expenses totalled over $2,700. Mr. Kealey further deducted from his gross income an additional $1,403 for the voluntary contributions he makes in varying monthly amounts to a private pension plan to supplement retirement benefits of Social Security. Fifteen percent of his net income from his business is the maximum amount he can contribute under the law, although he may choose to make a smaller contribution.

Particularly persuasive was the testimony of the expert witness,

Nathan Stein, a certified public accountant called by Mrs. Kealey. He testified to familiarity with the normal business expenses of a business such as Mr. Kealey's and with the proportion discretionary income normally bears to gross receipts in a business of that kind. He had examined Mr. Kealey's business records as well as his personal checking account. Mr. Stein testified that with deposits totalling approximately $56,000, as he added them for 1977, after payment of fixed costs for salaries, rent and utilities, discretionary or disposable income would have been about $30,500.

Other than the jointly owned marital home Mrs. Kealey has no assets. To meet household expenses she borrowed from the three older children from time to time during the year prior to the hearing and owes them a total of $3,900. In addition to Mr. Kealey's interest in the jointly owned home, he owns a vacant parcel of real property of undetermined value and various items of personal property: bank stock valued at $3,000, a savings account of $1,000, life insurance with a cash value of $1,500 and rings insured for $4,000. Mr. Stein estimated the value of Mr. Kealey's business to be 1¼ to 1½ times its annual billings, that is to say, on billings of $50,000, for example, its value would be between $62,500 and $75,000. Mr. Kealey's debts do not exceed his assets.

■■ Thus, of the two Mrs. Kealey's seems the greater need. Mr. Kealey appears able to expend the amounts ordered in support of his family. As the trial court pointed out, the minor child will soon be emancipated, and half of the monthly mortgage payment is, in effect, a contribution to Mr. Kealey's own equity in the jointly owned property he seeks to partition. We find no merit in Mr. Kealey's contention of impropriety as to that part of the order requiring him to pay an additional $100 for monthly maintenance should his wife ever be dispossessed of the marital home as by proceedings for partition or foreclosure. For these reasons we think that the trial court did not abuse its discretion in making the award.

We turn now to the issue of whether the trial court improperly ordered a stay of the partition suit until the emancipation of a minor child who holds no interest in the property. In 1963 in *Heldt v. Heldt* (1963), 29 Ill. 2d 61, 63-64, 193 N.E.2d 7, 8-9, where a partition suit had been instituted as well as a divorce complaint, the latter voluntarily dismissed during the pendency of the appeal of the partition decree, the Supreme Court of Illinois addressed this issue:

> "For the most part basic and well established principles of law are involved, and the issue presented is largely whether we should extend them to the unprecedented extremes urged by defendant and thus deny to plaintiff the right to partition.
>
> * * *
>
> Next, and principally, defendant urges that we should declare it

against public policy for either spouse, holding as a joint tenant, to partition premises being used as a home for both the husband and wife and their minor children. Stated otherwise, it is defendant's position that the absolute right to partition should be excepted when it involves a family home with minor children.* * *

We are not disposed to promulgate a sweeping rule of law which would in effect hold that the bonds of matrimony coupled with having children will deprive both parents of full rights and benefits in their property, and of the remedies provided by law with respect thereto."

*Heldt* has since been followed in three cases involving, like *Heldt* and the case at bar, suits for both divorce and partition, *Davis v. Davis* (1970), 128 Ill. App. 2d 427, 262 N.E.2d 788; *Tucker v. Tucker* (1975), 29 Ill. App. 3d 489, 330 N.E.2d 274, and *Renwick v. Renwick* (1977), 52 Ill. App. 3d 701, 367 N.E.2d 1009.

Recently two other appellate courts have acknowledged *Heldt* but have found in each case that the party seeking partition of the marital residence had waived his right to partition. In the first of these two cases, *Hulslander v. Hulslander* (1977), 55 Ill. App. 3d 981, 371 N.E.2d 652, the right was waived because the party seeking the remedy prior to petitioning for partition had asked that he be granted the marital residence free of any interest at all of the spouse, a claim inconsistent with the notion of partition and one which proved ruinous to the petitioner's bid for partition. "[The] right was waived when the parties sought a resolution of their conflicting claims irrespective of any remedy of partition." (55 Ill. App. 3d 981, 984.) In the second of these two cases, *Schuppe v. Schuppe* (1979), 69 Ill. App. 3d 200, 387 N.E.2d 346, expressly adopting the rationale of *Hulslander*, the court found that the right was waived because the parties at the time of the dissolution of the marriage and prior to the petition for partition, agreed that the marital home would be sold and the proceeds divided between the parties upon graduation from high school of the youngest minor child.

■■ As to whether the supreme court would agree that a right as important as the one to partition may be so easily waived or even waived at all—waiver here being distinguished from an express or implied agreement by the parties not to partition—we need not speculate. The facts of the instant case in no way suggest waiver. We do not think that Mr. Kealey's authorization five years earlier of Mrs. Kealey to purchase the marital home in order that the children might live in a single-family dwelling rather than in an apartment was an implied agreement not to partition. (See *Rosenberg v. Rosenberg* (1952), 413 Ill. 343, 108 N.E.2d 766.) Thus, we are bound to abide strictly by *Heldt*. Although the result

may seem particularly harsh in some instances, the supreme court has unequivocally spoken.

For the foregoing reasons those parts of the order of the circuit court requiring monthly payments of maintenance, child support and the marital home mortgage are affirmed, and that part of the same order prohibiting Mr. Kealey's voluntary partition of his interest in the marital residence is reversed as well as the partition suit order of stay until the emancipation of the minor child, and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part, and remanded.

KUNCE and KASSERMAN, JJ., concur.