In re MARRIAGE OF PHYLLIS MERCER (BOWER), Plaintiff-Appellee, and CLIFTON H. MERCER *et al.*, Defendant-Appellant.

First District (2nd Division)   No. 82—970

Opinion filed August 16, 1983.

William R. Jacobs II and Associates, of Chicago (William R. Jacobs II, of counsel), for appellant.

McCoy & Morris, of Chicago, for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

The principal issue raised in this appeal concerns property purchased in joint tenancy prior to marriage of the joint tenants to each other. A judge assigned to the domestic relations division of the circuit court of Cook County, in post-dissolution proceedings, found that the property was nonmarital. Subsequently, one of the joint tenants filed an action for partition in the chancery division of the circuit court of Cook County. A judge assigned to the latter division, refusing to transfer the cause to the domestic relations division for consolidation and consideration of this and other post-decretal matters, entered an order granting partition. A post-trial petition to vacate that order was denied. This appeal followed. We hold that the order of partition entered by the chancery division judge was correct and affirm for the reasons which follow.

Before marriage, Phyllis and Clifton Mercer purchased the subject property as joint tenants in October 1960. They married on February 26, 1962, and had one child, Sara Jane, born July 28, 1967. On March 22, 1972, the parties were divorced in Haiti and Phyllis subsequently married Joseph Bower. She filed an action in Cook County seeking en-

rollment of the foreign judgment and for child support in 1973. The cause was transferred to the then existing divorce division. In 1979, Phyllis filed an amended petition for division of property and other relief in the domestic relations division of the circuit court. The cause was litigated and a memorandum opinion was filed on January 7, 1981. An order was entered in that matter on March 10, 1981, in which the court found the subject property to be held in joint tenancy and nonmarital in character, with "*** each of the parties being possessed of a non-marital one-half interest therein."[1] The order made other findings with respect to custody, support, the interests owned by each party in personalty, a pension fund, an insurance policy and attorney fees. No retention of jurisdiction for any purpose was contained in the order and no appeal was taken therefrom.

The instant complaint seeking partition of the nonmarital property was filed in the chancery division on February 11, 1981, by Phyllis. An answer was filed by Clifton on May 19, 1981, in which he admitted that the subject property was owned by the parties in joint tenancy fee simple, alleging "*** special equities of payment of mortgage, taxes, assessments and improvements since 1972." Phyllis filed interrogatories on June 23, 1981, seeking identification of any payments by Clifton of real estate taxes, assessments and improvements. No answers to the interrogatories were filed by Clifton prior to the discovery "cut-off" date. A notice to produce documents evidencing such payments was served on Clifton by Phyllis; whether production was properly made is unclear from the record.

A motion to strike and dismiss or, alternatively, to transfer the cause to the domestic relations division filed by Clifton was denied. Phyllis' motion for appointment of a commissioner for purposes of property appraisal and report was allowed. Subsequently, the commissioner's report was filed showing an appraised current market value of the subject property, a split-level, single-family home, at $110,000.

At a hearing held on December 18, 1981, at which neither Clifton nor his attorney appeared, the circuit court approved the commissioner's report and directed that an order of partition and sale be presented, which was entered on December 29, 1981, with an appropriate finding as to finality and appealability. (73 Ill. 2d R. 304(a).) On March 24, 1982, Clifton's post-judgment petition was denied.

Clifton contends that the transfer of the instant case from the chancery division to the domestic relations division would have been

---

[1]No issue is raised as to the purported division of the nonmarital joint tenancy into finite portions.

proper, correct and would have avoided prejudice to either party, relying upon *Peck v. Peck* (1959), 16 Ill. 2d 268, 157 N.E.2d 249, and sections 503, 513, 514 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, pars. 503, 513, 514) (Act). He also relies upon the Historical and Practice Notes following sections 503(c) and 514 (Ill. Ann. Stat., ch. 40, pars. 503(c), 514, Historical and Practice Notes, at 458, 796-97 (Smith-Hurd 1980)). The foregoing are cited to show the court's broad powers with regard to the disposition of marital property. He maintains that the subject property is clearly marital property notwithstanding the domestic relations court's March 10, 1981, order finding that it was not, claiming that the order was not appealable "because it did not dispose of either the property or other future issues."

■■■ When a petition for dissolution has been allowed and all ancillary claims such as custody, support, maintenance and property rights have been determined, as in the case at bar, an order making such disposition is final and appealable. (*In re Marriage of Leopando* (1983), 96 Ill. 2d 114, 449 N.E.2d 137.) Clifton's assertion that the finding of March 10, 1981, by the domestic relations court was not final and appealable because it failed to "dispose" of the property is not persuasive. The parties could have decided to keep the property, sell it, rent it for income purposes, or do with it as their respective needs may have dictated without ever requiring further "disposition" by court action. If Clifton was dissatisfied with the nonmarital classification assigned the subject property by the domestic relations court, he was obligated to appeal therefrom, which he failed to do.

■■ ■ Under the foregoing circumstances, the chancery court could have considered that, in the absence of any action seeking to reopen the 1973 domestic relations case, nothing was pending in which transfer or consolidation would have been proper. A decision to consolidate causes of action, or not, lies within the sound discretion of the trial court (*Stone v. City of Belvidere* (1976), 39 Ill. App. 3d 829, 350 N.E.2d 526), and will not be disturbed unless an abuse of that discretion can be shown. (*Robinson v. Robinson* (1981), 100 Ill. App. 3d 437, 429 N.E.2d 183.) No such abuse of discretion appears in the present case. Neither sections 503, 513 and 514 of the Act nor *Peck v. Peck* require or suggest a different result under these facts. Indeed, the Historical and Practice Notes to section 514 of the Act state, in part:

> "Partition actions continue to be appropriate where, for example, division is sought as to property which the parties acquired in co-ownership prior to the marriage, or during the

marriage by inheritance or gift from a third party. In such cases, where the property would be classified as non-marital, the court has no general discretion to alter the fixed, separate interests of the parties as it has in the case of marital property held in co-ownership." Ill. Ann. Stat., ch. 40, par. 214, Historical and Practice Notes, at 797 (Smith-Hurd 1980).

Assuming, *arguendo*, that Clifton's position was viable in this appeal and the characterization of the subject property as nonmarital was still open to argument, the cases upon which he relies to support his position are distinguishable. In *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 427 N.E.2d 1239, and *In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 422 N.E.2d 635, the marital home was acquired after the parties were married, unlike the acquisition in the instant case in which the property was purchased by the parties almost 1½ years before they were married. In *In re Marriage of Lee* (1981), 87 Ill. 2d 64, 430 N.E.2d 1030, the parties spent $12,000 in marital funds improving the house they lived in while married, which the husband had purchased for $12,500 prior to their marriage. The supreme court there found the presumption that the house had been "transmuted" into marital property was unrebutted.

Nor does *In re Marriage of Olson* (1983), 96 Ill. 2d 432, 451 N.E.2d 825, lend support to Clifton's theory. In *Olson* the supreme court identified two principles relating to transmutation of property: one, that there be a significant commingling; and two, that an intent on the part of the owner or owners to make a gift of nonmarital property to the marital estate could be shown, before the presumption of transmutation applies. The record in the 1973 domestic relations case is not before us and evidence, or lack thereof, of significant commingling of nonmarital with marital assets is absent in this case. Clifton's inattention to interrogatories and failure to properly comply with a meaningful response to the notice to produce documents, which might have filled the evidentiary void, did nothing to support his position either at trial or in this appeal. No intention to make a gift of nonmarital property to the marital estate can be gleaned from this record. In fact, a contrary inference can be made from the parties acquiescence in maintaining title to the property in joint tenancy.

Clifton contends that the circuit court erred in refusing to consider certain money credits to which he may be entitled before entering the instant judgment, namely, reimbursement for one-half the taxes, mortgage payments, and maintenance costs he was required to pay since the divorce, as well as a sum of money the March 10, 1981, order directed Phyllis to pay him, which she has never done. The fore-

going items merely relate to setoffs against the amount of her portion of the proceeds of the sale, however. Such matters may be presented and considered after the property has been sold (see *Anderson v. Anderson* (1978), 62 Ill. App. 3d 468, 378 N.E.2d 1079); they do not affect the right to partition the property.

■ Error is next predicated upon the fact that the child of this marriage, Sara Jane, was a necessary party under the partition act (Ill. Rev. Stat. 1979, ch. 106, par. 46) and the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, pars. 503(c)(4), (8), (d)), yet she was not represented or made a party to the instant lawsuit. A party's right to partition is not affected by the fact that the property in question is the family home in which minor children presently reside. (*Heldt v. Heldt* (1963), 29 Ill. 2d 61, 193 N.E.2d 7; *Kealey v. Kealey* (1979), 77 Ill. App. 3d 962, 397 N.E.2d 5; *Renwick v. Renwick* (1977), 52 Ill. App. 3d 701, 367 N.E.2d 1009; *Tucker v. Tucker* (1975), 29 Ill. App. 3d 489, 330 N.E.2d 274.) Further, even if the subject property had been deemed part of the marital estate, in disposing of marital property the court may consider the desirability of awarding the family home, or the right to live therein for reasonable periods, to the *spouse* having custody of the children and *may* set aside a portion of the parties' property for the support, maintenance, education and general welfare of any minor, dependent or incompetent child of the parties. (Ill. Rev. Stat. 1979, ch. 40, pars. 503(c)(4), (8), (d).) Such provisions create no property right *per se* for children of broken marriages.

Because the order of March 10, 1981, provided that the property "remain" in joint tenancy, Clifton insists that it cannot be partitioned, relying upon *Hulslander v. Hulslander* (1977), 55 Ill. App. 3d 981, 371 N.E.2d 652, and *Schuppe v. Schuppe* (1979), 69 Ill. App. 3d 200, 387 N.E.2d 346. Neither case is of aid to him however, since both involved marital property, unlike that involved in the present case, and the courts in both cases were required to make dispositions of the properties involved. Nothing in the order of March 10, 1981, precluded partition here.

We conclude from the preceding analysis that the circuit court properly directed that the joint tenancy property be partitioned and sold.

Affirmed.

DOWNING, P.J., and PERLIN, J., concur.